262 S.W.2d 609 (1953)
WILHELM
v.
HAEMMERLE.
No. 43196.
Supreme Court of Missouri. Division No. 1.
November 9, 1953.
Motion to Modify Opinion and Order of Affirmance Denied December 14, 1953.
*610 Paul H. Koenig, William L. Mason, Jr., Koenig, Dietz & Mason, St. Louis, for appellant.
Wilbur C. Schwartz, St. Louis, for respondent. Joseph Nessenfeld, St. Louis, of counsel.
HOLLINGSWORTH, Judge.
In this action plaintiff seeks to recover damages in the sum of $25,000 from defendant, an individual doing business as "Clayton and Suburban Express", for personal injuries sustained from acetic acid sprayed upon him when a barrel of it fell to the ground and burst as he assisted defendant's motor truck driver roll the barrel down a skid board from the truck to the ground. The petition alleged that the skid was worn, rotten and frayed, not of sufficient strength to support the weight of the barrel and not reasonably safe for the purpose for which it was used, which facts the defendant knew or by the exercise of ordinary care should have known; and that by reason of the defective and unsafe condition of said skid it broke near its middle as the barrel was being rolled down it, causing the barrel to fall.
The jury returned a verdict for plaintiff in the sum of $18,000. On hearing defendant's motion to set aside the verdict and to enter judgment for defendant or in the alternative to grant a new trial, the trial court ordered: "If plaintiff remit from judgment of January 9, 1952, within ten days from date, the sum of Fourteen Thousand, Five Hundred Dollars ($14,500.00), defendant's motion for a new trial and for directed verdict will be overruled, otherwise sustained." Plaintiff did not make the remittitur and thereafter duly appealed to this court.
Defendant construes the order of the trial court above quoted to mean that both his motion for judgment and his alternative motion for a new trial were sustained. It is clear, however, that the order was not so intended and is not to be so construed. In conditionally ordering a new trial upon plaintiff's refusal to make remittitur, the court by necessary implication meant to overrule, and the order has the effect of overruling, the motion for judgment and sustaining the motion for new trial if plaintiff failed within the time specified to make the remittitur. Wicker v. Knox Glass Associates, Inc., 362 Mo. 614, 242 S.W.2d 566, 568.
Plaintiff contends the trial court abused its discretion in ordering any remittitur and that this court should set aside the order granting a new trial and direct entry of judgment in accordance with the verdict. He suggests, however, that if this court finds the verdict excessive, but not to the extent found by the trial court, we should order such remittitur as we deem proper. Defendant contends no submissible case was made and this court should order the cause remanded with directions to enter judgment for defendant; but that if we shall determine a submissible case was made, the order of remittitur, nevertheless, is supported by substantial evidence and the order granting a new trial upon failure to make the remittitur should be sustained. Plaintiff thereupon insists that inasmuch as defendant did not and could not appeal from the order overruling his motion for judgment and granting him a new trial, he cannot here question the submissibility of plaintiff's case. We shall first deal with this contention.
Plaintiff relies upon the case of Schneider v. St. Louis Public Service Co., Mo. Sup., 238 S.W.2d 350, 355. In that case, we did hold as contended by plaintiff in the instant case that when a defendant sought and obtained a new trial, from which order *611 plaintiff had appealed, the defendant would not be permitted to assert on plaintiff's appeal other grounds set forth in defendant's after-trial motions in support of the trial court's order. However, in the earlier case of Hughes v. St. Louis Nat. League Baseball Club, 359 Mo. 993, 224 S.W.2d 989, 992, 16 A.L.R.2d 904, we had held that when plaintiff appeals from an order setting aside his judgment, the defendant may in his brief on that appeal allege error in instructions or other procedural matters raised in his motion for new trial; this for the reason that the appellate court may and should consider everything perserved in the record to determine the proper disposition of the case.
Thereafter, this court came to the conclusion that the holding in the Schneider case, 238 S.W.2d 350, 355, was contrary to the letter and spirit of the new Code of Civil Procedure and should no longer be followed. Accordingly, in the more recent case of Lilly v. Boswell, 362 Mo. 444, 242 S.W.2d 73, 77, we renounced the holding in the Schneider case, stating: "Upon further consideration of that matter, we are convinced the holding in that case is out of harmony with the purpose and spirit of the Civil Code as stated in the Hughes and Nelson cases, supra, and should not be followed." Plaintiff further contends, however, that the doctrine announced in the Lilly case, 242 S.W.2d 73, 77, was dictum and is not controlling. That may be conceded. But we are convinced that the Lilly case and the Hughes case, and other cases holding to the same effect, announce the better rule. See also the recent case of Lindsey v. Williams, Mo.Sup., 260 S.W.2d 472, wherein we followed the rule announced in the Hughes and Lilly cases. The Schneider case, to the extent it is in conflict with the rule announced in the Hughes and Lilly cases and followed in the Lindsey case, is, therefore, overruled. We hold that defendant in the instant case is entitled to urge upon this court that plaintiff made no submissible case, which point he duly preserved in the trial court by timely trial motions and in his after-trial motion to set aside the verdict and to enter judgment in his favor or in the alternative for a new trial.
According to plaintiff's evidence, on September 20, 1941, he was and for more than three years had been in the employ of Baldwin Studios in St. Louis County as a maintenance man. Baldwin Studios used considerable quantities of acetic acid in developing photographs. The acid was delivered by defendant in barrels by motor truck to the rear of the Baldwin premises. When so delivered, plaintiff usually assisted defendant's truck driver in unloading the barrels from the truck to the ground level.
On the morning of the aforesaid day, a girl in the employ of Baldwin directed plaintiff to go to the rear of the premises and receive a delivery. There he saw defendant's truck with defendant's driver in charge of it. On the truck were two wooden barrels of acetic acid. They were labeled "Acetic Acid70%" and weighed approximately 400 pounds each. The driver had hooked a skid on the side of the truckbed. It was a plain, single board about one inch thick and "worn a lot", "worn out through the center", and extended from the truckbed to the ground. The driver asked plaintiff "to give him a lift".
Plaintiff and the driver lowered one barrel down the skid. As they did so, the skid "bent terribly" in the middle. Plaintiff asked the driver if he thought it would hold. The driver replied, "That skid is all right." They then began to move the second barrel down the skid. As that barrel approached the middle portion of the skid, the skid broke in the middle, causing the barrel to fall and strike the ground with such force that the top blew off and acid splashed upon plaintiff and into his eyes, injuring him.
Defendant's truck driver testified that he delivered the acid on the occasion in question. He denied that the skid broke. He further testified that after he had put the skid in place, plaintiff, without request, volunteered to assist him; that as he and plaintiff were lowering the second barrel the head of the barrel became loosened through no fault in the method of handling it, and acid commenced to spill from it; *612 and that in trying to keep the contents from spilling they lost control of the barrel and it fell to the ground.
Defendant produced at the trial a skid which, according to his evidence, was the skid used in unloading the barrels. According to the testimony of defendant, it had been stored away without further use since the day plaintiff was injured; that it had been in use two or three years before the day in question and was slightly worn. The skid produced at the trial was made of hickory, one and one-half inches thick, with irons at the top and bottom and three irons across its back to prevent splitting. Defendant further testified that he had one or more skids like this one, which were made by a blacksmith on his order.
Plaintiff, in rebuttal, denied that the skid produced was the skid used on the occasion he was injured, and testified that the skid which was used had no irons on it other than a claw iron or irons at one end for attaching it to the truckbed; and that the skid used was about three feet longer than the skid produced at the trial.
Defendant contends that the evidence viewed from the standpoint most favorable to plaintiff did not warrant submission of either the hypothesis that the skid was "worn and not of sufficient strength to support the weight of the said barrel" or that defendant had actual or constructive knowledge of its insufficiency, as submitted in plaintiff's verdict directing instruction.
We think defendant errs in both contentions. The fact that the skid broke when used for the purpose and in the manner customarily used shows it was of insufficient strength to support the weight of the barrel.
As to defendant's knowledge of its insufficiency, it is of significance that defendant does not contend that a skid such as plaintiff described the one used to be, to wit: a plain board, one inch thick, "worn out in the center", with no reinforcement irons, would be of sufficient strength to support the weight of the barrel. This fact, coupled with the production of a heavier and reinforced skid at the trial as the skid used when plaintiff was injured and as typical of the skids generally used by him, and which any juror would know was much stronger than the skid described by plaintiff, would warrant an inference that defendant in the exercise of ordinary care should have known that a skid such as described by plaintiff would not be of sufficient strength for the use to which it was put. Furthermore, when used to lower the first barrel the skid "bent terribly". True, the word "terribly" is a conclusion, but it was not objected to, and it does convey meaning; it caused plaintiff to ask defendant's driver if the skid was safe, to which he replied, "That skid is all right." We hold that the evidence made a submissible issue on defendant's knowledge that a skid of the kind described by plaintiff was not of sufficient strength to support the weight of the barrel.
Finally, on the question of submissibility, defendant argues that plaintiff saw the skid and had as much knowledge of its condition as defendant; that, having such knowledge, plaintiff is chargeable with contributory negligence as a matter of law in continuing to assist the driver. Contributory negligence was not pleaded, but if plaintiff's evidence shows that he was guilty of contributory negligence as a matter of law, then he did not make a submissible case. The skid was furnished by defendant, who had had it made for this purpose and had used it for several years; he certainly knew more about its tensile strength than plaintiff, who testified that he merely saw the skid but did not examine it. Under these circumstances, and when defendant's driver had assured him it was safe for use, it cannot be said as a matter of law that he did not act as a reasonably prudent man in the exercise of ordinary care would have acted under similar circumstances. Lincoln v. St. Louis-San Francisco R. Co., 223 Mo.App. 46, 50, 7 S.W.2d 460, 462; Willig v. Chicago, B. & Q. R. Co., 345 Mo. 705, 137 S.W.2d 430, 437.
In considering excessiveness of the verdict, the trial court had the right to weigh the conflicting evidence and evaluate *613 all of the evidence in the light of its opportunity to see, hear and observe plaintiff and all other witnesses. In reviewing the action of the trial court, we do not weigh the evidence, but we do examine the record to determine whether there is substantial evidence to support the ruling. If the evidence, viewed in the light most favorable to the ruling, affords reasonable and substantial support of it, then it must be sustained. Steuernagel v. St. Louis Public Service Co., 361 Mo. 1066, 238 S.W.2d 426, 431. It is only when the record viewed in the light most favorable to the trial court's ruling does not afford reasonable and substantial support of the ruling that the appellate courts will overrule the action of the trial court. Lindsey v. Williams, Mo.Sup., 260 S.W.2d 472, 478.
The evidence as to plaintiff's injuries may be summarized: According to plaintiff, the acid spilled all over his body and into his eyes and he could not see anything. Water was immediately applied to his body and eyes. He then went to a doctor in Wellston who covered his eyes, then to Dr. Hardesty, an eye specialist, who sent him to a hospital. Plaintiff's eyes were very painful. Plaintiff said he was blind for eight days, but Dr. Hardesty merely said his eyes were covered and he could not open them. Anesthetics were administered and the linings of the lids were examined and found highly irritated. Sloughing of the tissue ensued, with much secretion and necrotic tissue in the conjunctival sac. Dr. Hardesty saw him daily during the fourteen days he remained in the hospital. Cold compresses were constantly kept on his eyes and sedatives were administered. He left the hospital without assistance, but had to wear dark glasses. Dr. Hardesty thereafter saw him daily until the end of December, 1941, and thereafter once or twice a month until June of 1943. He did not again see him until March of 1946. During the time plaintiff was under Dr. Hardesty's care, his eyes felt sandy and gritty; lights and heat hurt them. This was due to the growth of new tissue replacing the scarred tissue. When Dr. Hardesty last saw him in 1946, his eyelids were slightly red, a result of the scar tissue. It was his opinion that if plaintiff's eyes still feel sandy and gritty, it probably is the result of scar tissue, but could be from other causes. Dr. Hardesty did not know his present condition. He was of the opinion that any reduction in plaintiff's visual field was slight, and may have resulted from trauma; he did not know whether it was caused by burns. He did not prescribe glasses. When he last saw plaintiff in 1946 he had 15% loss of direct vision, with no loss of side vision.
Dr. Howard, an eye physician and surgeon, testified on behalf of plaintiff: He examined plaintiff several times in 1944. Plaintiff was suffering from burning of his eyes and blurred vision. He found diminished vision in both eyes with loss of side vision. His vision was 20/50 minus. He also saw plaintiff in 1946 and again in 1948. In 1948 he had a loss of 10% central vision and a marked loss of side vision. He examined plaintiff again on the day before he was testifying [January, 1952], at which time his vision was identical with that of 1948, which witness estimated to be 50% of visual efficiency in each eye. There was more pterygium (a thickening from irritation) than in 1948, and plaintiff may have to submit to an operation or continue to suffer with that pterygium. Plaintiff blinks his eyes and it is a distressing condition; it is a permanent disability. He prescribed a treatment which he advised plaintiff to use constantly.
Dr. Schwartz, an eye specialist, testified in behalf of defendant: He teaches opthalmology at Washington University. He first saw plaintiff on February 14, 1942, when he examined him for the General Chemical Company. At that time plaintiff's vision was 20/38. He looked especially for injury from acid and found none. There was some irritation and pterygium, but it certainly was not due to his injury. He saw plaintiff again in 1948, when plaintiff was sent to him by Royal Indemnity Company for examination prior to an anticipated trial of this case. His pupils reacted to light. The cornea of both eyes was very clear. There was no surface scarring; *614 nothing to cause lowered vision. Plaintiff said he had double vision, but accepted tests showed none.
Plaintiff returned to work at Baldwin Studios seven weeks after he was injured and remained there until 1943, for which he was paid his customary wage of 60 cents per hour. Upon leaving Baldwin, he went into "an essential employment" at Wagner Electric Company, for which he was paid 80 cents per hour, and where he now earns $1.70 per hour. He runs both automatic and hand drill presses that drill little holes in brake shoes, and has done that work ever since he went there. It is "not too fine" work. He wears safety goggles, but no glasses. In 1942 and until June of 1943 he went to see Dr. Hardesty once or twice a month and did not see him again until March, 1946. In so doing he lost some time from his work, but did not lose much time in 1944, 1946 or 1948, in seeing other doctors. He obtained a prescription from Dr. Howard in 1946, which he had not had refilled since 1948, and uses it only when his eyes bother; still has some left.
The evidence above narrated is extremely conflicting. If the trial court believed, as it apparently did, that plaintiff's injuries were superficial and had healed without residual impairment of his eyesight due to his injuries when he was examined by Dr. Schwartz in February, 1942, then plaintiff's right of recovery is of course limited to that kind of an injury and to compensation for the pain and mental anguish suffered by him from the time he was injured until his eyes had healed and for his loss of earnings during that period. He offered no proof of expenditures for medical treatment and hospitalization.
A review of the numerous cases cited us by both parties shed no light upon the reasonableness of the award fixed by the court. But calculated on the basis above outlined, plaintiff lost as a result of his injuries not to exceed twelve weeks of working time, for which his loss, figured at 80 cents per hour for a forty hour week, would amount to $384, leaving in excess of $3,000 as compensation for his mental and physical anguish and pain. We cannot say that such an award on its face is so grossly inadequate as to convict the trial court of an abuse of discretion.
The order granting a new trial is affirmed.
All concur.