Marie SANFORD and Louis Sanford, Plaintiffs-Respondents,

v.

Eugene REEVES, Defendant,

and

Francis Dawkins, Defendant-Appellant.

No. 32061.

St. Louis Court of Appeals.

Missouri.

Jan. 18, 1966.

Rehearing Denied Feb. 18, 1966.

Evans & Dixon, John C. Shepherd, Paul V. Gilbert, St. Louis, for defendant-appellant Francis Dawkins.

Thomas Hullverson, Hullverson, Richardson & Hullverson, St. Louis, Corinne Richardson, Max W. Soffer, for plaintiffs-respondents.

Michael W. Hodges, St. Louis, for defendant Eugene Reeves.

TOWNSEND, Commissioner.

This is a chain collision case in which plaintiffs, husband and wife, occupants of Car No. 1, have recovered judgments for personal injuries, medical and hospital expense and property damage against both defendant Dawkins, driver of Car No. 2, and defendant Reeves, driver of Car No. 3. Only the defendant Dawkins has appealed.

The collisions occurred on the evening of April 22, 1961. Plaintiffs' testimony shows that their car, driven by the husband, was in the southbound lane of traffic next to the center line of Kingshighway in the City of St. Louis, a short distance south of Page Avenue, and that plaintiffs' car had come to a complete stop in its lane owing to the stoppage of a long line of cars ahead. Mr. Sanford states that his car had been stopped for approximately thirty seconds when he looked into his rear-view mirror and saw the lights of a car approaching. He says that he knew he was going to be hit and accordingly reached for his child. He estimates that the approaching car was thirty to forty feet behind his automobile when so observed. Almost immediately thereafter, "maybe a split second, not that long" a collision occurred,—"it sounded like an explosion",—in which the rear of his car was struck. He recalls no collision before or after the one just described. He heard only one impact. When he got out of his car, he found that the front of the Dawkins' car was underneath the rear of his car. Mrs. Sanford also testified that the Sanford car was stopped and that she heard no crash before their car was struck from the rear. She has no idea how long their car was stopped before it was struck; nor can she recall whether she heard one impact or two.

Defendant Dawkins confirms that the Sanford car was stopped at the time that his car made contact with it. He states that both cars were stopped about four seconds. His testimony is to the effect that he was stopped half a car length behind the Sanford car when he heard a screech of brakes and as he started to look into his rear-view mirror his car was struck from the rear; in spite of the fact that his foot was on the brake, his car was propelled forward by the blow from the rear so that his car struck the Sanford car. His pleading denies that plaintiffs' vehicle was otherwise struck by his car and he testified that his car did not make contact with the Sanford car before his own car was struck in the rear. He testified that the Sanford car had come to a slow, gradual stop and that he had made the same kind of a slow stop as he approached the Sanford car. He estimated his speed in the last block and a half before the collision at fifteen to twenty miles an hour. When he inspected the damage he found that the front of his car and the rear of the Sanford car were "tangled together"; the Reeves car was at a distance of two or three feet from the rear of the Dawkins car.

Defendant Reeves does not remember whether the Dawkins car was moving or stopped at the time of his collision with it. —"I would say he was stopping." He does not know whether there was more than one collision involving the three cars because of the loud screeching noise which his tires were making on the pavement. He skidded into the Dawkins' car in a straight line. He testified that he jammed on his brakes when he saw the rear of the Dawkins car raise up. " * * * I would say it raised at least twelve inches. It was enough to be noticeable." He doesn't know whether the impact with the Dawkins car caused the latter to move forward. His two front fenders and the hood of his car were bent and the grille was damaged.

The bumpers of the two cars missed. The Dawkins' deck lid was sprung. "* * * if he had brake lights, I didn't see them." He estimated his speed at the time of his collision at between twenty and twenty-five miles per hour.

At the scene of the accident, Reeves was given a witness statement form by a police officer and requested to fill it out, which he did in his own handwriting. At the police station, Reeves signed a report, apparently derived in part from his written statement and in part from his oral statements made to the investigating police officer, which read: "* * * when he observed that vehicle number two had stopped, he applied his brakes, but too late to avoid striking vehicle number two, forcing vehicle number two into the rear of vehicle number three [i. e., the Sanford vehicle]".

At the scene of the collision Mrs. Sanford wrote out the following statement:

"Going south on Kingshighway and stopped for a line of cars and Francis Dawkins hit us from behind when Eugene Reeves hit and caused him to hit us. Happened at 8:30 and my wife was hurt." o

This statement was signed both by her and by her husband. She states that she wrote out the statement at the request of a police officer. "All I remember, is a policeman giving me a paper and telling me what to write. * * * I had someone tell me what to write * * * but like I said, what the officer told me to write. * * * I really don't know then what happened. * * * I don't know what went on. I thought him being an officer, he knew what he was saying." She heard neither Dawkins nor Reeves make any statement at the scene. She did not know the names of the other parties involved until told what to write and at the time of impact did not know the number of cars involved.

All the above-mentioned witnesses were called by the plaintiffs.

Plaintiffs' verdict directing instructions follow:

"Instruction No. 3.

"The Court instructs the jury that if you find and believe from the evidence that on the occasion mentioned in evidence the car in which Mr. and Mrs. Sanford were seated was stopped for over five seconds prior to being struck at the rear, and that the defendant Dawkins, in operating his car southwardly on Kingshighway, allowed it to strike and collide with the rear end of the Sanford automobile, and that in so doing he failed to exercise the highest degree of care, then you are instructed that he was negligent, and

"If you further find and believe from the evidence that Mr. and Mrs. Sanford were injured as a direct result of having their car struck at the rear end thereof, and that negligence, if any, of the defendant Dawkins as above submitted was the sole proximate cause of such injuries to Mr. and Mrs. Sanford, and that the defendant Reeves was not negligent in any respect submitted to you in other instructions herein, then and in that event your verdict should be in favor of Mr. and Mrs. Sanford and against the defendant Dawkins alone.

"Instruction No. 4.

"The Court instructs the jury that if you find and believe from the evidence that on the occasion mentioned in evidence Mr. and Mrs. Sanford were seated in their car and that it had been stopped at the place mentioned in evidence for over five seconds before being struck at the rear end by the Dawkins' automobile, and that the automobile of the defendant Dawkins came to an abrupt stop and was almost immediately thereafter struck at the rear end by the automobile of the defendant Reeves, and that such collision and that involving the Sanford car were almost simultaneous, and

that in permitting his automobile to strike and collide with that of the defendant Dawkins under the circumstances aforesaid, if you so find, was a failure on the part of the defendant Reeves to exercise the highest degree of care, then you are instructed that he was negligent, and if you further find and believe from the evidence that Mr. and Mrs. Sanford were injured as a direct result of having their car struck at the rear end thereof and that the defendant Dawkins was negligent in that respect submitted to you in Instruction No. 3 and that such negligence, if any, on his part directly combined and concurred to bring about such injuries, if any, to Mr. and Mrs. Sanford, then you are instructed that Mr. and Mrs. Sanford are entitled to recover and your verdict should be in their favor and against both the defendant Dawkins and the defendant Reeves."

No verdict-directing instruction was tendered by Dawkins.

Defendant Dawkins alleges error because, he says, these instructions failed to hypothesize sufficient facts concerning the collision between Reeves and Dawkins and practically amounted to a directed verdict against Dawkins. In the light of all the evidence the most striking thing about the instructions is that nothing is said about a verdict against Reeves alone with the negative concomitant that no verdict could be had against him unless verdict was rendered against Dawkins at the same time.

■ It is an elementary proposition that a plaintiff is normally entitled to submit his own theory of the case, supported by evidence, without attempting to negative directly the theory upon which his opponent has conducted his case. Plaintiffs' pleadings charge the separate collisions and the separate negligence of each defendant and the resulting damage as "a direct result of the negligence of both defendants." Selected portions of the plaintiffs' evidence tend to support the charge.

Defendant Dawkins seeks to avoid the rule designated above as elementary by referring to the proposition recently articulated in Wray v. King, Mo.App., 385 S.W.2d 831, 835 (quoting from Branch v. Gordon's Transports, Inc., Mo.App., 375 S.W.2d 418, 421) in the following language: " * * * if, in the process of making a prima facie case or in proving conduct which would ordinarily constitute negligence per se, the plaintiff adduces evidence which tends to show an accidental or non-negligent cause, or a matter which would exonerate the defendant, then the plaintiff's verdict-directing instruction may not ignore the evidence which tends to excuse the defendant, but must hypothesize the possibly non-negligent causes or exculpatory facts and require the jury to find that the defendant's conduct was in fact negligent."

We proceed to examine the background from which the stated proposition has been derived.

This statement and others of like import are found in that class of automobile collision cases which may be referred to comprehensively as the skidding cases. Thus, in the Wray case, supra, defendant's car skidded into the path of plaintiff's oncoming automobile; in the Branch case, supra, defendant's tractor struck the rear of plaintiff's car in the course of the jackknifing and skidding of defendant's tractor-trailer outfit.

■ It has been well established that skidding alone does not in and of itself show negligence. Girratono v. Kansas City Public Service Co., 363 Mo. 359, 251 S.W.2d 59, 63; Evans v. Colombo, Mo., 319 S.W.2d 549, 550. Consequently in an automobile collision case evidence only of skidding could do no more than prove an ambiguous fact, i.e., a fact purely neutral and without significance. One who relied thereon could scarcely be said to have sustained the burden of proof. " * * * the cases hold that the mere skidding of an automobile or motor bus * * * is not negligence and does not give rise to an inference of negligence."

Girratono, supra, 251 S.W.2d at p. 63. Both the Branch and Wray cases clearly recognize the ambiguous character of such evidence. Thus, the Branch case refers to "jackknifing and sliding, or lateral movement—circumstances which do not necessarily imply negligence, but from which the inference is merely ambiguous." At 375 S.W.2d p. 423. More positively the opinion in the Wray case states that "we prefer * * * to say that the skidding of defendant's car, standing alone, gives rise to no inference at all." At 385 S.W.2d p. 834. Accordingly it is error to submit, on the basis only of such evidence, an instruction predicated upon the hypothesis that defendant "allowed the tractor-trailer unit * * * to run into and collide" with plaintiff's car (Branch case) or upon the hypothesis that defendant "failed to drive on the right half or east half of said road and highway, but instead went onto the left side * * * and came into collision with the motor truck" (Wray case).

Skidding "is a circumstance tending to show that plaintiff never had a cause of action in the first place" (Wray, at p. 836). It is in this sense that the courts in the Wray and Branch cases refer to an accidental or non-negligent cause and state the requirement of hypothesization of possibly exculpatory facts. In such a situation the fact of skidding, evidence of which has been produced by plaintiff, may not be ignored; the submission must include the fact of skidding and then go on to hypothesize facts from which the jury might find negligence antecedent to and causing the skidding or along with or after the skidding. Evans v. Colombo, supra; Doyle v. Wilmesherrer, Mo., 358 S.W.2d 837, 841.

It is of significance to note how the evidentiary situation in the Wray and Branch cases differs from that in the present case. In the former cases the plaintiff's evidence in question went only to the fact of skidding—a wholly neutral fact. In the instant case plaintiffs' evidence was of two varieties, one to the effect that Dawkins collided with plaintiffs' car owing to his failure to exercise the highest degree of care and the other, that Dawkins made no contact with plaintiffs' car until he was propelled into it by the blow from Reeves' car.

The defendant has referred us to no authorities where the quoted proposition relating to plaintiff's adducing evidence "which tends to show an accidental or non-negligent cause, or a matter which would exonerate the defendant" has been applied in other than the skidding cases. This fortifies the conclusion that such a rule as is there stated must be confined—and was intended only to relate—to the background situation from which such an enunciation emerges.

■ We return to the complaint of defendant Dawkins that plaintiffs' verdict-directing instruction ignored their evidence of his stopping which would have exonerated him. As plaintiffs' witness, Dawkins testified that he had stopped several seconds before his car was struck by that of defendant Reeves. But plaintiff Sanford's testimony flatly contradicted this. Since the testimony of one of plaintiffs' witnesses contradicted the testimony of another of plaintiffs' witnesses, the question remains whether an instruction based on the testimony of the second, sufficient in itself to justify a finding for plaintiffs, is proper if it fails to negative the factual content of the testimony of the first witness. The answer to that question is given by Burr v. Singh, 362 Mo. 692, 243 S.W.2d 295, where it was held that a plaintiff does not lose his right to a submission upon the basis of one theory supported by evidence because he has introduced testimony of another witness conflicting with that given by the first.

■ Appellant voices objection to the word "allow" as used in Instruction 3. For present purposes we accept that one of several dictionary definitions of the word selected by appellant, namely, "to suffer by neglecting to restrain or prevent". We think the word necessarily implies, in addi-

tion, power to control and, to spell it out, would be understood by a jury to mean "to suffer or permit by neglecting to restrain when there was power to control". There was ample evidence of appellant's conduct to submit that question to the jury.

It is the considered opinion of the Court that Instruction 4 properly presented plaintiffs' theory of the case. The instruction hypothesized facts supported by the evidence which directly contradicted testimony of defendant Dawkins—the kind of stop made by the latter, the length of the stop before collision with plaintiffs' car, the interval between impacts. It also hypothesized by reference to Instruction No. 3 that Dawkins permitted his car to strike and collide with plaintiffs' car whereas Dawkins' testimony was that he made contact with plaintiffs' car only when shoved into it by Reeves' car. By its verdict the jury plainly adopted plaintiffs' version of what had occurred. Since that version was based upon competent evidence and was appropriately submitted by Instruction 4 we find no error.

The judgment of the Circuit Court should be affirmed.

PER CURIAM.

The foregoing opinion by TOWNSEND, C., is adopted as the opinion of this Court. Accordingly, judgment is affirmed.

WOLFE, P. J. and ANDERSON and RUDDY, JJ., concur.