Adele **OVERBEY**, Respondent,

v.

Norma **FODDE**, Appellant.

No. 52679.

Supreme Court of Missouri, Division No. 1.

Nov. 13, 1967.

Koenig & Dietz, F. Daley Abels, St. Louis, for respondent.

James J. Amelung, Holtkamp & Amelung, St. Louis, for defendant-appellant.

HIGGINS, Commissioner.

Action for $25,000 damages for wrongful death. Verdict and judgment were for defendant, but plaintiff was awarded a new trial on the specified ground that the verdict was "against the weight of the evidence."

Defendant contends that the court erred in granting plaintiff a new trial because "Plaintiff failed to make a submissible case on her theory that defendant drove on the wrong side of the road," and that "Even if plaintiff made a submissible case * *, the trial court arbitrarily, abusively and unlawfully exercised discretion in setting aside the jury verdict * * * because the evidence in favor of plaintiff's submitted theory is so meager and that in favor of defendant's defense so overwhelming that the action of the trial judge is obviously the result of an arbitrary and capricious exercise of discretion."

"The trial court is vested with an inherent and broad discretion in granting one new trial upon the ground the verdict and judgment are against the weight of the evidence. * * * And its ruling upon that ground will not be disturbed, except in case of manifest abuse * * *. The rule is sometimes expressed by saying 'that the granting of a new trial by the trial court will not be interfered with on appeal where there is substantial evidence to sustain the trial court's view, or, putting it another way, when there is substantial evidence to support a verdict for the party to whom a new trial is granted.'" Dawson v. Scherff, Mo., 281 S.W.2d 825, 831.

In determining whether the trial court properly exercised its discretion the record must be considered from a view most favorable to plaintiff to ascertain if there was sufficient substantial evidence to justify submission of plaintiff's case, Gibson v. Newhouse, Mo., 402 S.W.2d 324, 327[5]; and the order granting a new trial on the ground the verdict was against the weight of the evidence would be arbitrary and an abuse of discretion only where the benefiting party failed to make a submissible case. Schmidt v. Allen, Mo., 303 S.W.2d 652, 655[1].

Plaintiff's husband, James Overbey, was a passenger in a 1964 Valiant automobile driven by his nephew, Raymond Jacobs, northbound on Lindbergh, a four-lane,

blacktop highway, 48 feet wide, in St. Louis County, Missouri. Defendant, southbound on Lindbergh in her 1964 Pontiac automobile, crossed the center line and collided with the Valiant, causing the death of plaintiff's husband. The collision occurred about 12:30 p. m., November 15, 1964, in the northbound side of the highway. Rain was falling and the road was wet.

Raymond Jacobs, driver of the Valiant, had no recollection of the collision.

James Schubert witnessed the collision. He was driving south on Lindbergh in the passing lane or lane next to the center line. He was "probably six car lengths" behind the defendant's Pontiac and was driving 40 to 45 miles per hour. He saw the Pontiac cross the center line and compared its crossing "to a car taking off of a main highway to a clover leaf, just a gradual left." At that time he saw the northbound Valiant in "the outside lane, near the gravel." There was no deviation in the course of the Pontiac from the time it crossed the center line to the collision in which "the front left of the southbound car and the front left of the northbound car" came together. In his recollection there was no mud on the highway.

On cross-examination he stated that "the road there was slippery but this was from the gasoline from the gas tanks." He did not know if the road was slippery before the accident—"could've been." His cross-examination identified a recorded statement given November 16, 1964, in which he placed himself "two hundred yards possibly" behind the Pontiac when he saw it cross the center line and into collision with the Valiant in the lane "nearest the center line." "The highway was slick." Upon further cross-examination he did not know whether the Pontiac was sliding when it made what appeared to him as a left-hand turn, and he did not remember "either way" whether he told police that the Pontiac skidded.

Trooper Richard L. Short of the Missouri State Highway Patrol investigated the accident. When he arrived at the scene the Valiant was "headed mostly north, north and west and * * * the Pontiac was turned around and was also headed northeast." The Valiant was "mostly on the shoulder" on the east side of Lindbergh. He could recall no mud on the highway and in the appropriate space in his report form he indicated only that the road was wet. On cross-examination he was asked, "Did the witnesses themselves tell you that they saw skidding? A The driver of the Pontiac (Mrs. Fodde) indicated that she lost control and skidded.

"Q In your report you also say the witnesses indicated to you that there was skidding. I am asking specifically about Mr. Shubert. Is Mr. Shubert included in that group of witnesses? A I don't recall the statements of the witnesses other than the driver.

"Q The driver of the southbound car indicated to you that she did skid. A Yes."

Jim Bunch, Jr., testified by deposition. He was driving a tractor-trailer rig south in the outside of the two southbound lanes on Lindbergh and saw the collision between the southbound Pontiac and the northbound Valiant. He first saw defendant's Pontiac "out of the corner of my eye in the mirror as it started to pass." It was completely in the inside southbound lane travelling about 35 miles per hour. When first noticed by the truck driver, the Pontiac's doors "were almost parallel" to his own. "I just glanced at it as it was alongside of me, and then it swerved and started across the road, and naturally I watched it then. * * * I thought it was going to fishtail, but it went almost, I would say, about at a 45-degree angle directly across the road in the other lane. * * * I couldn't see any variation too much in the speed. I wasn't paying any particular attention to that. It didn't seem to me that it slowed too much. * * * I don't remember just exactly at what time I seen the northbound car. Seems to me that it was just possibly a second or two before they hit. * * * He was in the outside lane." Mr. Bunch saw

nothing unusual about the roadway except being slick from rainfall. "There was no mud." When he saw the Pontiac at its 45-degree angle, "The brake lights were on. I actually didn't see any wheels sliding. I didn't pay any attention to that; but there was no skid marks on the pavement at all." The Pontiac "never varied from that angle. It went directly across. * * * It went at a 45-degree angle. It seemed that it held the same particular direction. It never varied." Mr. Bunch saw the brake lights on the Pontiac and "couldn't understand why she wouldn't come off the brakes and try to get control of the car again, and she seemed to be frozen to the controls, and as I stated, was in the position completely across the road."

There also was evidence that plaintiff was dependent upon her husband and of his earnings.

The defense was "non-negligent skidding," evidence of which came from defendant's 14-year-old son, Robert Fodde; however, as previously demonstrated, there was ample substantial evidence from which a jury reasonably could find that defendant drove the Pontiac automobile on the wrong side of the road and that collision with the Valiant automobile and plaintiff's husband's death resulted, clearly a submissible case. Hunter v. Norton, Mo., 412 S.W.2d 163, 165[3, 4].

Appellant cites Sanford v. Reeves, Mo. App., 399 S.W.2d 457, 461[2]; Evans v. Colombo, Mo., 319 S.W.2d 549, 552[3]; Wray v. King, Mo.App., 385 S.W.2d 831, 835[10], and Committee's Comment, MAI 17.13, and argues that "Plaintiff's own evidence showed skidding to be an element in the case and she should not have ignored this element in her instructions." Neither the cases nor the argument is in point because the only issue is whether plaintiff made a submissible case, not whether she, in her own case, produced evidence of skidding requiring informing the jury in her submission of the exculpatory effect of a nonnegligent skid.

The discrepancies, if any, in the testimony of witnesses in plaintiff's case would be for the jury to resolve, because, contrary to appellant's argument, none of it consists of statements which are "so far removed from actual possibilities that they lose the force of bona fide estimates and honest opinions and become so manifestly incredible, irreconcilable with, and contrary to physical laws and common human knowledge that they demonstrate in and of themselves that they are made without actual knowledge and are mere conjecture, or wishful thinking. They do not constitute probative evidence." Ewen v. Spence, Mo.App., 405 S.W.2d 521, 524[7].

Since it is demonstrable on this record that plaintiff made a submissible case, it may not be said that the trial court abused its discretion in granting plaintiff a new trial on the ground that the verdict is against the weight of the evidence. Moore v. Southwestern Bell Telephone Co., Mo., 301 S.W.2d 817, 820[3]; Gibson v. Newhouse, supra, 402 S.W.2d 1.c. 327[4].

Judgment affirmed and cause remanded.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

HOUSER and WELBORN, CC., concur.

HENLEY, P. J., SEILER, J., and HOLMAN, Alternate J., concur.

STORCKMAN, J., not sitting.