**NORTHEAST MISSOURI ELECTRIC POW-
ER COOPERATIVE, a Corporation,
Plaintiff-Respondent,**

v.

**C. S. TODD and Reba Todd, His Wife, and
Champ B. Todd and Mary Ellen Todd, His
Wife, Defendants-Appellants.**

No. 32172.

St. Louis Court of Appeals.

Missouri.

March 15, 1966.

J. Andy Zenge, Jr., Dennis W. Smith, Canton, for appellants.

J. Patrick Wheeler, Canton, Gregory C. Stockard, Jefferson City, for respondent.

CLEMENS, Commissioner.

This is a condemnation suit for a power line right-of-way across the defendants' farm. There was a $3,290 verdict and judgment for the defendants, but they appealed when the trial court set aside that judgment and granted the plaintiff a new trial. Although there were four owner-defendants, only Champ B. Todd took part in the proceedings and he will be referred to in the singular as the defendant.

■ We first note the narrowed scope of our review. The trial court did not comply with Civil Rule 78.01, V.A.M.R., which required it to specify the reasons for granting the new trial. In the absence of such reasons, a different set of principles governs the scope of our review. First, we may not indulge in any presumption that the new trial was granted on discretionary grounds. Second, we presume that the new trial was granted erroneously. Third, the burden is on the plaintiff-respondent to demonstrate on the record that there was reversible error. Fourth, in meeting that burden the plaintiff-respondent is confined to the errors specified in both its motion for a new trial and its brief. Civil Rules 83.06(b) and (c) and 83.13(a); McCormack v. St. Louis Public Service Co., Mo., 337 S.W.2d 918 [2]; Myers v. Moffett, Mo., 312 S.W.2d 59 [3]; Drake v. Hicks, Mo., 261 S.W.2d 45 [1-3]; Gayer v. J. C. Penney Co., Mo.App., 326 S.W.2d 413 [1].

In the plaintiff-respondent's motion for a new trial it asserted seventeen grounds, and it has briefed ten of them here. Because of the above restrictions on the scope of our review, we have only two issues to decide. First, where there was neither evidence of community need for defendants' farm as an airstrip nor evidence that its suitability for an airstrip would enhance its market value, could the defendant testify as to his plans to build a private airstrip on the farm, and could he give his opinion as to how much the farm value had depreciated because the plaintiff's power line had kept him from building the airstrip? Second, where the owner's opposition to the condemnation had been made known to the jury, was it prejudicially erroneous to instruct the jury that the plaintiff was taking the defendants' land against their will?

The proceedings began in 1962 after plaintiff had been authorized to build a single-pole, electric transmission line in Lewis County. It was designed to cross defendants' 291-acre farm diagonally on a 100-foot right-of-way and required the installation of eleven poles carrying three live wires and one static wire. After fruitless negotiations with the defendant, plaintiff filed its petition to condemn. An order of condemnation was duly entered, and commissioners assessed the defendants' damages at $495. The defendants filed exceptions to the award, and in due course the cause was tried before a jury to assess the defendants' damages.

The defendants' value witnesses put their damages as sums ranging from $1,500 to $2,910; plaintiff's value witnesses said it

was from $500 to $575. In addition, defendant testified that the power line had thwarted his plan to build an airstrip on the farm, and that he thereby had been separately damaged to the extent of $5,000 to $7,000.

Plaintiff's motion for new trial and its brief charge error in the admission of evidence concerning the suitability of defendants' land for an air landing strip, the defendant's plans to use it for that purpose, and his opinion as to the further reduction in the value of the farm because plaintiff's power line had made it unsuitable for landing airplanes.

The defendant testified that during World War II he had taken flying lessons, but that his student pilot's license had long since expired and was never renewed. Nonetheless, about a year before the taking he had joined a ten-man flying club and bought a fractional interest in a small airplane. Shortly thereafter the club disbanded and the plane was sold, but in the meantime the defendant and a commercial pilot had examined the defendants' farm both from the air and on the ground. They had then determined that a suitable sod runway could be laid out on the farm, and defendant "planned" to do so. However, when plaintiff's power line was proposed, the plan for the landing strip was abandoned because of interference by the power line. There was no evidence of any existing or expected business or community need for the airstrip; nor was there any evidence relating the planned use to the reasonable *market* value of the farm. Only the defendant testified as to damages connected with the use of the farm for an airstrip. He said that in addition to the agricultural damage to the farm, its value to him had been further reduced by as much as $5,000 to $7,000 just because it was no longer suitable for a landing strip. On cross-examination he testified:

"Q How do you figure that the value of the land, then, would be decreased from five to seven thousand dollars by reason of the fact there was no airstrip on the land?

"A Because I feel it would take that much—I think you might misunderstand there—I said I was damaged that much, not that the property would be decreased. It would be decreased that much to me.

"Q Well, now, that's different. It's not your testimony, then, that your farm would bring five to seven thousand dollars less money by reason of the fact you didn't have an airstrip there?

"A It could possibly if the person who purchased it was interested in an airstrip, but I don't know who would be the person."

The defendant's testimony showed that the proposed use of the farm to land airplanes was speculative and was personal to him. And, we view the quoted testimony as showing that this additional claimed reduction in value was also wholly personal to him and had no relation to the real issue: the reasonable *market* value of the farm before and after the taking.

■ This subject of a planned airstrip saturated the trial. The defendants' opening statement included, over plaintiff's objection, an outline of the testimony about the planned airstrip and its separate value. The testimony was repeatedly objected to, and plaintiff's motions to strike were denied. Again, over plaintiff's objections, defendant stressed this element of damage in closing argument. The $3,290 verdict exceeded the maximum $2,910 amount of defendants' evidence of agricultural damage. It is evident, therefore, that the jury did consider the evidence as to the separate damage by loss of the planned airstrip. So, if the admission of this evidence was error, it was prejudicially so.

■ The defendants maintain that the challenged testimony was proper because it showed the highest and best use of their land. They cite five cases which say that a condemnee may do so. But, either ex-

pressly or by clear implication, those cases condition the admissibility of such evidence on the condemnee's further showing a demand in the community for such future use, beyond mere speculation by the owner; and, also, on showing that there is a relationship between such future use and the present value of the land. These limitations are declared in the cases of Empire Dist. Electric Co. v. Johnston, 241 Mo.App. 759, 268 S.W.2d 78 [3–6], and Union Electric Co. of Missouri v. McNulty, Mo., 344 S.W. 2d 37 [4], quoting 29 C.J.S. Eminent Domain § 160. The limitations are summarized in 18 Am.Jur., Eminent Domain, § 244:

> "Value for Prospective or Available Uses by Owner.—The tribunal whose duty it is to determine the value of land taken by eminent domain is not limited to the value of the land for the purposes for which it is actually used, but may consider all uses to which it is adapted and might be put, and will award compensation upon the basis of its most advantageous and valuable use, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future. * * * The uses which may be considered must be so reasonably probable as to have an effect on the present market value of the land; a purely imaginative or speculative value cannot be considered. There must be a possibility considerable enough to be a practical consideration and actually to influence prices. * * *"

The challenged testimony here did not rise to the prescribed level, and we are compelled to hold that its admission was prejudicially erroneous.

■ In its motion for new trial and in its brief here, the plaintiff also challenges a portion of defendants' verdict-directing instruction. It began with an abstract statement that the corporate plaintiff had the right to condemn the right-of-way "and thereby take defendants' property without their consent, against their will." Ruling on a similar instruction in the case of State ex rel. State Highway Commission v. Goodson, 365 Mo. 260, 281 S.W.2d 858 [2, 3], the court said such a statement presents no proper factual issue and "* * * is in apt language to inflame the minds of the jurors, to arouse their sympathy for the defendants and prejudice against the plaintiff, and for a verdict in a larger amount than warranted by an impartial consideration of the evidence. * * *" Defendants urge, correctly, that the challenged words are erroneous only if the complaining party has been prejudiced or the jury misled thereby, citing the Goodson case, supra, and City of St. Louis v. Vasquez, Mo., 341 S.W.2d 839 [2]. We readily acknowledge that limitation, but in our case the prejudicial effect is apparent because of the antagonistic atmosphere in which the instruction was given.

For example, the defendant testified that he had repeatedly tried to get plaintiff to select another location for its pole line; that the plaintiff's agent stated the company did not care about defendants' wishes because it could take whatever land it wanted. Defendant also related the details of his negotiations with plaintiff, and told the jury that the plaintiff's original offer was only $35 per pole on tillable land and $15 per pole on untillable land. In the jury's presence, pungent statements were made about the "domineering attitude" of the power company, that the plaintiff "can do anything they want to" on the right-of-way, and that the defendants will have to have the easement across their farm "from now on until the end of time." Defendant improperly attempted to use a mortality table to show his life expectancy. The defendant spoke of the danger of electrocution in case the power line should break, told of cows breaking out through a fence plaintiff had ruptured with heavy equipment, and made references to, and introduced photographs pinpointing, damage to the land by the plaintiff after the time of taking. This, even though the plaintiff was separately liable to defendants for that kind of dam-

age by an independent action, not in the present condemnation case. These same points were stressed in defendants' opening statement and their closing argument.

 The issue for the jury was the difference in the reasonable market value of the farm before and after the taking. But, with all the above extraneous, argumentative matters freshly before them, the jury was instructed that the plaintiff was taking the defendants' land without their consent and against their will. By this the court, in effect, authorized the jury to consider the inflammatory, inadmissible evidence and comments. On the authority of cases of State v. Goodson, supra, and State ex rel. State Highway Commission v. Huddleston, Mo.App., 52 S.W.2d 33 [1], we hold that under these circumstances the instruction was prejudicially erroneous.

In short, we hold that the trial court correctly granted a new trial because of the admission of statements concerning the airstrip, and also because of giving defendants' verdict-directing instruction.

The plaintiff further challenges the qualifications of defendants' witnesses who were permitted to give opinions as to the value of defendants' land. We will not rule that point, but will direct counsel's attention to the fundamental qualifications of knowledge of the property and of sale prices of comparable properties in the vicinity. A witness so qualified may give separate opinions as to the reasonable market value before the taking and the reasonable market value after the taking. See State ex rel. State Highway Commission v. Bloomfield Tractor Sales, Mo.App., 381 S.W.2d 20 [1, 2, 4, 5]; and Taney County v. Addington, Mo., 304 S.W.2d 842 [4].

The order granting a new trial should be affirmed and the cause remanded.

PER CURIAM.

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, the order granting a new trial is affirmed and the cause is remanded.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.