STATE of Missouri ex rel. N. W. ELECTRIC POWER COOPERATIVE, INC., a corporation, Appellant,

v.

William Hadley STEWART et al., Exceptors, Loren L. Coon and Coy Coon, husband and wife, and Winton E. Coon and Twyla Coon, husband and wife, Respondents.

No. 24998.

Kansas City Court of Appeals.

Missouri.

April 7, 1969.

Phil Hauck, Pickett, Andereck & Hauck, Trenton, for appellant.

Wilbur L. Pollard, David Lee Wells, North Kansas City, Williams, Norton & Pollard, North Kansas City, of counsel, for respondents.

SHANGLER, Judge.

On August 3, 1967, plaintiff N. W. Electric Power Cooperative, Inc., condemned a strip of land 100 feet wide as a perpetual easement for the overhead wire transmission of electricity across defendants' land. No poles were contemplated to be implanted thereon for such purposes; rather, they were located on the Smith property immediately to the south of defendants' land. The transmission line, consisting of 3 electric and 2 static wires ran generally from southeasterly to northwesterly so that only the northwesterly wire, transmitting 69,000 volts, overhung defendants' property at a height of 40 feet at its southwest corner for a distance of ten feet.

The easement itself, however, extended 79½ feet along the west frontage of the

southernmost portion of the property and 62½ feet easterly along its south limits. By its terms, plaintiff was authorized to construct gates to permit ingress to and egress from the transmission line and to trim, cut and remove any trees, growth or structures from within 50 feet of the line.

The property itself is located in Goshen, some 5 miles west of Princeton, Mercer County, Missouri. It is a generally level area, bounded on the west by Highway A, directly across from the Princeton Golf Course. Somewhat to the north of the property, runs Highway 136, an all-weather thoroughfare, which, in turn, runs generally across the northern part of Missouri.

Each of the witnesses testified tersely and briefly. The defendants presented Lloyd Bryan, a local real estate salesman. Defendants Loren Coon and Gene Coon testified on their own behalf. Although the record does not affirmatively reveal it, we shall assume that "Gene" is but a pseudonym for the "Winston E." Coon designated in the pleadings as a party defendant. We shall advert to the substance of their testimony at the appropriate times during the course of this discussion.

Plaintiff presented its Field Engineer, James Gallagher, who described in some detail the physical aspects of the easement taking, as well as his understanding of the legal consequences of the proposed taking. Plaintiff additionally offered four value witnesses, the first of whom was Clarence Shafer, a licensed Missouri real estate broker and life-long farmer with offices in Trenton. He was familiar with land values of the area, having kept listings of residential and farm properties in Mercer County. In fact, some two years prior to the trial, he had sold the Lewis farm just north across the road from defendants' property. He was informed as to the terms and extent of the easement taking (as were all the witnesses who offered value and damage opinions) and concluded that defendants were not damaged thereby as the reasonable market value before and after the taking was $5,000.00. Robert Jones, a life-long resident of Mercer County, owned, with his sister, 1,000 acres of farm land, and perhaps more. He had been called upon by the court to make appraisals of real estate on several occasions, was familiar with defendants' property and concluded that the value of defendants' land prior to taking was $2,500.00, and after taking, $2,475.00, for a damage of $25.00. He did not profess any knowledge of residential property values. Earl Puffer, a life-long Mercer County farmer and current farm owner, had worked in the immediate vicinity of the Coon property. He kept himself informed of farm values. It was not disclosed whether he had any familiarity with residential property values in the area. Although his own property (presumably in Mercer County) had doubled in value within the past ten years, he valued defendants' property before the taking at $2,000.00 and after, at $1,975.00, for a damage of $25.00. It is to be noted that by this account, defendants' land, purchased in 1946 for $2,400.00, had depreciated in value to $2,000.00 as of immediately before the taking. Plaintiff's final witness was Wilbur Ewing, a licensed real estate broker and local agent for United Farm Agency, with an office in Trenton, Missouri. He was familiar with land values in Mercer County, maintaining a listing of farm and residential properties of that area. He knew the Coon property and had viewed it several times. He valued defendants' property before and after the taking at $4,500.00, with no resultant damage from the taking. The jury returned a verdict of $300.00 for defendants and plaintiff appeals.

Plaintiff assigns two basic errors to the trial court. We interpolate them as: (1) the court improperly refused to sustain its motion to strike, and erroneously admitted defendants' evidence of damage to their land "based solely upon the value of an intended residential lot", as there had been no evidentiary showing of a present need, or

probable future need, for the use of the land for such purpose, and was, therefore, speculative; and (2) the court improperly received the testimony of defendant Gene Coon, an owner, as it went beyond a legitimate expression of fair market value, but undertook to attribute elements thereto he was not qualified to present and evaluate. As we have intimated, the assignments of error were somewhat differently phrased by appellant, but we take these to be the sense of them. We have concluded that neither assignment of error can be sustained as they are unsupported by the evidence in this case.

 As to plaintiff's first point, we do not take issue with the principle of law, as such, offered by plaintiff in support of it. In cases involving a taking of real estate, or an interest therein, " ' * * * the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future.' " Union Electric Company of Missouri v. McNulty, Mo.Sup., 344 S.W.2d 37, at p. 40, quoting from 29 C.J.S. Eminent Domain § 160, p. 1026. Furthermore, speculative schemes of use by the proprietor must be excluded as there must be a demonstrable relationship between the future use and present value of the land. Northeast Missouri Electric Power Coop. v. Todd, Mo. App., 401 S.W.2d 161, at p. 164; Empire Dist. Electric Co. v. Johnston, 241 Mo.App. 759, 268 S.W.2d 78.

 We have concluded, however, that evidence both of plaintiff and defendants was such that the jury could have readily determined that the highest and best use of defendants' land was for residential sites and if not for a present use as such, then for use in the reasonably immediate future. Lloyd Bryan testified as a value witness for defendants. He was a long-time resident of Princeton, Missouri and had been a real estate salesman of both residential and farm properties for twenty years. He knew the Coon property and considered its highest and best use as that of residential sites. He based that opinion upon a continuing demand for such lots by those preferring rural homes, and others seeking to avoid city taxes. He concluded that the fair market value of each of defendants' six lots prior to taking was $1,000.00 (for a total of $6,000.00) and that after taking, the fair market value of the south lot was $500.00, so that defendants' damage by the taking was $500.00. Furthermore, plaintiff's value witness, Wilbur Ewing, a licensed broker and agent for United Farm Agency, readily acknowledged the suitability of the Coon property for use as homesites in the dimensions staked out by defendant Gene Coon. Its highest and best use, he concluded, was "an acreage or, in other words, a home".

We relate defendant Gene Coon's testimony in some detail as it will be referred to both within the context of the point under discussion, as well as other points to be considered later. Defendant Gene Coon testified as to the location of the land, its proximity to the Princeton Golf Course and the nature of the surrounding roads. He had measured off the land into six lots of one hundred feet frontages and two hundred sixty feet depths, having been prompted to that activity by information received from "some of the contractors around town (who) had told me that they were running out of desirable lots in town * * *". He knew that building lots were being purchased north and south of Princeton, but was not aware that anyone was building residences in the area of Goshen. Upon being asked by his attorney what he considered to be the highest and best use of the property, defendant Coon did not answer but was interrupted by the objection of plaintiff's counsel that "this is speculation and surmise and that at this time I would also like to ask a question preliminary to further objection". At this point, plaintiff's counsel conducted an inquiry much in the nature of cross-examination,

and during its course elicited that defendant Gene Coon had staked out the property by driving laths into the ground, that no modern water system was available on the land, no sewer system, nor curbs. Plaintiff's counsel then objected "to the answers which are being solicited by questions propounded by defendants' attorney on the basis that such questions call for answers which are speculative in nature, based upon surmise". It is to be remembered that, in fact, defendants' counsel had solicited only that residential lots were in demand north and south of Princeton, defendant, as yet, not having been permitted to state his judgment as to the highest and best use of the land. Upon having been asked by his counsel once again " * * * what, in your opinion, was the fair market value of that approximate (sic) six-acre tract as of August 31, 1967?", defendant Gene Coon answered: "An average of one thousand dollars per lot." The questioning continued:

MR. POLLARD: "And there were six lots?"

WITNESS: "Yes, sir."

MR. POLLARD: "That would be a total of six thousand dollars—"

WITNESS: "Yes, sir".

MR. POLLARD: " * * * for the approximate (sic) six acres?"

WITNESS: "Yes, sir".

MR. POLLARD: "Now, then, we are speaking immediately before the appropriation of the easement across the southernmost lot, is that true?"

WITNESS: "Yes."

MR. POLLARD: "Gene, do you have an opinion as to the fair market value of that six-acre tract immediately after the appropriation or the taking of the easement?"

WITNESS: "Yes, sir."

MR. POLLARD: "Would you tell us what that would be?"

WITNESS: "I wouldn't give three hundred dollars for that southernmost lot."

(Objection, which was sustained, and answer stricken.)

MR. POLLARD: "All right, just tell us what you consider to be the fair market value of the property immediately after the taking or the appropriation of the easement by the Cooperative Company?"

WITNESS: "Well, it would be that six thousand minus the figure that I just gave you."

MR. POLLARD: "Minus seven hundred dollars, is that what * * *"

WITNESS: "Yes, sir."

MR. POLLARD: "So you're telling the Court and the jury that in your opinion as a result of the condemning for easement purposes you have been damaged seven hundred dollars?"

WITNESS: "Yes, sir. I say this because of the only twenty foot of free access to that lot."

The evidence we have recounted we believe is more ample than that before the court in Union Electric Company of Missouri v. Simpson, Mo.App., 371 S.W.2d 673, a case strikingly similar on the facts, which also involved an easement taking of a portion of a farm for an electric transmission line. The land was located a mile from Flat River, an economically depressed area (as was Goshen, according to plaintiff's argument). Part of the farm itself was bounded on one side by a highway and was touched by another highway, much in the manner of the subject property. There was evidence that, although there was no present population movement, any growth of Flat River would be in the direction of the farm, and despite the admission by the property owner that the population of the town was declining rather than increasing, the trial court's overruling of plaintiff's objection on the ground that the future use for residential sites was uncertain was affirmed by the appellate court. As con-

cluded by the court in State ex rel. State Highway Commission v. Graham, Mo.App., 74 S.W.2d 493, at p. 495, on the basis of the evidence, we cannot say as a matter of law that the potential use of defendants' land for residential sites is speculative, or not in reasonable anticipation.

■ Plaintiff's next complaint is that although defendant Gene Coon, as owner, was competent to give his testimonial opinion as to the highest and best use of the land, that opinion was revealed by his own testimony to have been "without proper foundation and not based on proper elements" and therefore lacked probative value and should have been excluded, citing Mayor, etc., of City of Liberty v. Boggess, Mo.Sup., 321 S.W.2d 677 and Shelby County R–IV School District v. Herman, Mo.Sup., 392 S.W.2d 609. Authority to the same effect is Nichols on Eminent Domain, Vol. 5, Sec. 18.4(2); 31 Am.Jur.2d, Expert and Opinion Evidence, Sec. 142, p. 696 and Ward v. Deck, Mo.App., 419 S.W. 2d 286. We have already concluded, and given our reasons, that there was a proper evidentiary foundation for defendant Gene Coon's opinion in the reasonably anticipated use of the land for building sites. His testimony on that subject was competent and properly received. Neither the Shelby County case nor Boggess is in point. In Boggess, the owner had testified that the reasonable market value of his property was $100,000.00. Upon cross-examination and recross-examination, the owner repeatedly testified, among other things, that he "didn't care to sell the property at all * * * it's not being sold, it's being taken". The court concluded that such a fact entered into the formulation of his opinion as to value, was not a proper element thereof, and was properly stricken. In Shelby County, the court excluded the farm owner's testimony of value because he undertook to base it on a capitalization of net profits of the one most profitable year of production. At page 614 of 392 S.W.2d, the court stated: "An opinion based exclusively upon a highly variable factor, which

the net income from this farming operation was affirmatively shown to be, would be without probative value." In the instant case, defendant's opinion as to value was based in part on a current demand for such property as building sites, certainly not "a highly variable factor". These cases are not analogous. Also on this point are Northeast Missouri Electric Power Coop. v. Todd, supra, and State ex rel. Kansas City Power and Light Company v. Gauld, 360 Mo. 795, 230 S.W.2d 850.

■ The purpose of defendant Gene Coon's testimony as to intended use, rather, was simply to illustrate the adaptability of his land for residential sites and, as such, was proper. Such evidence becomes prejudicial when its purpose is "to show enhanced loss because the owner is prohibited from carrying out that particular improvement". Empire District Electric Co. v. Johnston, 241 Mo.App. 759, 268 S.W. 2d 78, at page 82; City of St. Louis v. Paramount Shoe Mfg. Co., 237 Mo.App. 200, 168 S.W.2d 149.

■ Finally, plaintiff contends the trial court erred in permitting defendants' witnesses "to limit the basis of their opinion of damages to one specific intended use of a part of the property and to ascribe a dollar and cents value to this one specific element", and cites Empire District Electric Co. v. Johnston, supra, in support of this contention. We have already disposed of that complaint as it relates to the testimony of Gene Coon and rely on the holding in Empire District Electric Co. v. Johnston, supra, in so doing. Any objection plaintiff may have had to the reception of witness Bryan's testimony was not preserved for our review. When asked by defendants' counsel as to his opinion of the fair market value "of one of those lots" as of the date of taking, plaintiff's counsel objected "that the basis or the elements which go to make up this answer have not yet been established and he is not shown to be qualified in this respect". The objection was overruled; no motion to

**152**

strike was thereafter made and no other objection lodged or other relief requested during the balance of the testimony of Mr. Bryan. Witness Bryan's testimony was properly before the jury, including his opinion that the fair market value of the south lot was reduced by $500.00 as a result of the taking.

 In this context, we refer again to defendant Gene Coon's testimony and particularly the colloquy between him and his counsel, Mr. Pollard. Upon analysis, it can fairly be concluded that the questioning by plaintiff's counsel (having interrupted the direct examination) oriented Coon's testimony in terms of lots rather than total acreage. The questioning by his own counsel as to fair market value of the land before and after taking was properly in terms of total acreage. Although Coon's response of $700.00 damage inferentially referred to the south lot only, it must be borne in mind that the physical intrusion of the property resulting from plaintiff's taking was limited to the southernmost portion of defendants' acreage. The allusions of defendant Gene Coon and witness Lloyd Bryan to the south lot did not necessarily betray a mistakened basis for the computation of damage. The jury was instructed on the issue of damages by Instruction 3, MAI 9.02, offered by defendants. It properly informed the jury "You must award defendants such sum as you believe was the difference between the fair market value of *defendants' whole property* immediately before the taking \* \* \* and the value of *defendants' remaining property* immediately after such taking \* \* \*". Should some of the evidence relating to damages have been irrelevant and speculative, it could not have been of such a nature as to have influenced the verdict. Under this instruction, the jury could not but have understood that defendants were seeking depreciation of the market value of the acreage as a whole. Empire District Electric Co. v. Johnston, supra, p. 83; Texas-Empire Pipe Line Co. v. Stewart, 331 Mo. 525, 55 S.W.2d 283, at p. 285. Under these circumstances, we do not find plaintiff was prejudiced.

An award for damages in a condemnation case will not be disturbed on appeal when it is supported by substantial evidence. The testimony of but one qualified witness, properly admitted, constitutes substantial evidence of value. State ex rel. State Highway Commission v. Hamel, Mo. Sup., 404 S.W.2d 736; Kansas City v. Thomson, Mo.Sup., 208 S.W.2d 216; State ex rel. State Highway Commission v. Eilers, Mo.Sup., 406 S.W.2d 567. The jury's determination was supported by substantial evidence. The judgment is affirmed.

All concur.