STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Missouri,
Plaintiff-Respondent,

v.

Ruth E. M. GRAELER et al. (Exceptions
of Paul Londe and Shirley Londe),
Defendants-Appellants.

No. 35432.

Missouri Court of Appeals,
St. Louis District,
Division 2.

Aug. 26, 1975.

422

Klamen, Summers, Wattenberg & Compton, Norman W. Drey, Jr., Clayton, for defendants-appellants.

Thomas H. Pearson, Kirkwood, Gregory F. Hoffmann, St. Louis, Bruce A. Ring, Jefferson City, for plaintiff-respondent.

KELLY, Judge.

Paul Londe and Shirley Londe, hereinafter defendants, bring this appeal from a judgment of the Circuit Court of St. Louis County awarding them $35,000.00 damages for the condemnation of a 3.85 acre portion of their 39.4 acre tract of land in St. Louis County abutting Highway 40 for highway purposes.

The issues presented here are directed at what the defendants contend are errors of the trial court committed during a jury trial in ruling that for the purpose of determining damages the date of the taking of defendants' 3.85 acres of land occurred on April 23, 1968, and in admitting into evidence for the purpose of assessing damages sales of certain properties which were not truly comparable. We have considered these Points and find no error.

The State Highway Commission, hereafter plaintiff, commenced this condemnation proceeding, Commissioners were appointed, filed their Award and both the plaintiff and the defendants filed exceptions and requested jury trial.

Prior to the formal commencement of the trial on the issue of damages, the defendants filed a pre-trial motion by which they sought to establish the date of the taking as

November 21, 1962 and to exclude from the trial any evidence which employed as a basis of comparable sales for the purpose of damages other properties zoned "Non-urban".

An in-chamber hearing was conducted prior to commencement of the jury trial on defendants' motion and after an evidentiary hearing thereon the trial judge ruled that the date of the taking was April 23, 1968, and that plaintiff would be permitted to introduce evidence of value based on comparable sales of other properties zoned "Non-urban". Subsequently, during defendants' opening statement, out of the jury's hearing, the trial judge amended his earlier ruling to the extent that he would allow either party to show the history of the property, including plans made as early as 1962 by way of an application for a Special Use Permit by defendants for construction of a "convention-motel" on their tract of land and the provisions, relating to a 250 foot set-back line incorporated in the ordinance granting said Special Use Permit, and a letter from a District Engineer of plaintiff to the St. Louis County Planning Commission of October 9, 1962, "suggesting" that a 200 foot set-back line be established in case the Special Use Permit was to be granted.[1]

Trial commenced and evidence was introduced from which the jury could find that the defendants purchased the 39.4 acre tract of land in 1960, at which time the entire tract was zoned "B", a classification permitting one single family dwelling unit per acre. Much of the tract, approximately 27 acres, was unsuitable for development because of the nature of its topography and its "silty" texture which would cause structural problems if built upon. The remaining acreage was suitable for construction.

After purchasing the tract, Mr. Londe prepared some plans for the development of a 500 unit convention motel, a shopping area and office buildings on 12 acres of the tract. The remaining acreage was to be used for bridle paths, scenic walks, sewage disposal treatment plants and other supportive facilities. Defendants had a commitment from Ramada Inn Corporation to lease the facility after construction.

Subsequently, on April 11th, 1965, the St. Louis County Council passed a comprehensive zoning ordinance rezoning defendants' tract to "Non-urban", a categorization which was by definition designed to "guide and coordinate development within the unincorporated portions of St. Louis County in order to secure the appropriate development of the physical environment." Section 1003.107, S.L.C.O.A. 1972. The practical effect of this classification was that non-urban land zoning—i. e., "areas within which rough natural topography, geological conditions, or location to urbanized areas creates practical difficulties in providing and maintaining public roads and public or public-utility services and facilities and also . . . areas in which significant non-urban uses have been established"—and the uses permitted thereunder would preclude defendants from using their tract for a convention-motel complex as defendants envisioned, in the absence of a change of zoning.

There was conflicting evidence on the value of the land taken. Defendants' evidence was that the damages were $152,-500.00; plaintiff's, $20,000.00. The jury, as stated supra, rendered a verdict for $35,-000.00.

Defendants' first contention is that the judgment of the trial court should be reversed and the cause returned there for a new trial because the trial court erred in holding that the date of the taking was April 23, 1968.

This contention is based, for the most part, upon evidence heard in support of

1. Although evidence of this nature was introduced in the evidentiary hearing on defendants' pre-trial motion, neither party offered any evidence of the zoning history of defendants' tract other than that mentioned with respect to the 1965 rezoning during the trial to the jury.

defendants' pre-trial motion and not, in toto, presented to the jury. It is necessary, therefore, in disposing of this Point, to recite at this part of the opinion that evidence.

On September 17, 1962, Mr. Londe filed an Application for A Special Use Permit with the St. Louis County Council for the rezoning of the front 28.7 acres of the 39.4 acre tract from "B"—One Acre Single Family District—for the construction, operation and maintenance of a Motel-Motor Hotel, restaurant, riding stable and golf course thereon. Notice of the public hearing on the application was set for October 16, 1962, and, as was the custom of the County authorities, the plaintiff received notice of the hearing. On October 9, 1962, plaintiff's District Engineer wrote a letter to the St. Louis County Planning Commission with reference to the scheduled public hearing and advised the Assistant Planning Director of the St. Louis County Planning Commission of the plaintiff's intention to improve Highway 40 "to a divided dual highway facility with limited access," that it was thought that approximately 200 feet would be needed for additional right of way from the Londe tract and suggested that a set-back line of that amount be established if the Application was granted.

On the date of the public hearing on defendants' Application the Chairman of the St. Louis County Planning Commission submitted a report to the St. Louis County Council relative to the Application. In this report reference was made to the plaintiff's plans for Highway 40 and the "suggestion" of the District Engineer that a 200 foot set-back line be established for that purpose. In this report it was pointed out that a 200 foot set-back line, if established, would place the proposed "entry feature" and "restaurant-reception" facility of the proposed motel within the proposed right-of-way.

On November 21, 1962, the St. Louis County Council enacted Ordinance No. 2730 granting the defendants the Special Use Permit subject however to a number of conditions, the first of which was a 250 foot set-back line. As established in the Ordinance, this 250 foot set-back line had the effect of preventing the defendants from building the convention motel and facilities as planned on 4 of the most usable acres of the entire tract, and, according to Mr. Londe, thwarted the development for the reason that construction of a motel of any smaller accommodations made the project economically impossible, and the defendants had no choice other than to abandon the project.

■ The law in this State is settled that the determination of the value of property taken in condemnation proceedings is made as of the date of the taking, and that the date of the taking is that date when the condemning authority pays into court the amount of the Commissioners' Award, because that is when the condemnor obtains the rights of ownership in the property taken. *State ex rel. Highway Commission v. Anderson,* 485 S.W.2d 614, 616 (Mo.App. 1972).

■ In *Anderson* this Court did not rule on what recourse is available to a landowner when damage to or decrease in the value of his property occurs directly as a result of the anticipated condemnation of his property prior to the actual taking. We conclude that we need not resolve that question here either. In *Anderson,* l.c. 615, we said that it is clear that whatever remedy may be available to the landowner, the determination of the value of condemned property is made in a condemnation proceeding as of the date of the taking. That statement is no less applicable here. What the defendants' property was worth on November 21, 1962, when zoned differently, is not material to the determination of damages at the time of the taking on April 23, 1968, except as it might have some bearing on the value of the property on the date of the payment into court of the Commissioners' Award. To hold otherwise in the trial of exceptions to the Award of the Commissioners would,

in the absence of appropriate pleadings and the presence of all necessary parties to a proper determination of the validity of the zoning of the condemned property at some other date, tend to the alteration of the statutory proceeding and confuse rather than enlighten the jury charged with the duty of assessing the damages sustained by the defendants.

The defendants have cited in support of their position a number of cases from other jurisdictions holding that the date for the setting of the damages for the property taken may, under some circumstances, be other than the day of the payment of the Commissioners' Award into Court. These cases are not controlling in this State. *State ex rel. Highway Commission v. Anderson,* supra. We conclude that whatever damage the defendants may have sustained by the action of the St. Louis County Council in acting favorably on their Application for Special Use Permit with the set-back line in excess of that suggested by plaintiff's District Engineer as a condition on November 21, 1962, cannot be considered as a "taking" whereby the damages by condemnation are to be determined in a condemnation proceeding and we therefore rule this Point against defendants.

Defendants' final Points in fact constitute in the first instance a collateral attack on the validity of the "Non-urban" classification of their property on the grounds that said classification "is wholly inappropriate in application for use within the area of St. Louis County" for the reason it is "capricious, arbitrary and wholly invalid."

We decline to consider these contentions in this appeal from a jury verdict awarding damages in a condemnation proceeding because there is no evidence in the record to substantiate these attacks. This Point—Point III in defendants' brief—states nothing other than conclusions and is unsupported by any evidence which would aid us in making the determination necessary to arrive at the conclusions espoused by the defendants.

The validity or constitutionality of a zoning ordinance cannot be collaterally attacked in a condemnation proceeding in which the authority enacting the zoning ordinance is not a party to that proceeding. *Hull v. Detroit Equipment Installation, Inc.,* 12 Mich.App. 532, 163 N.W.2d 271, 272[4] (1968). In *Marvin E. Nieberg Real Estate Co. v. St. Louis County,* Mo., 488 S.W.2d 626, 630[6] (1973) the Supreme Court of this State held that if the zoning authorities acted arbitrarily, illegally or so unreasonably as to have abused the discretion vested in them, the avenue of appeal or a declaratory judgment suit was open as a means of direct attack on the ordinance, and where this was not done, a condemnation proceeding was not the proper vehicle for challenging the validity of the zoning authorities' actions.

The other facet of defendants' attack is directed to the admission into evidence of expert opinion on the issue of fair market value of the land taken as of the date of the taking—April 23, 1968—for the reason that the expert testimony offered by the plaintiff was based upon comparable sales of other parcels of property zoned "Non-urban". The thrust of defendants' argument on this Point is that the damage to the defendants from the taking was directly related to the highest and best use of the land, i. e., intensive commercial, and that the classification "Non-urban" was an artificial land holding categorization unrelated to "use" and therefore not a valid gauge against which to measure the damages they suffered.

Plaintiff responds to this argument by quoting the general rule that the market value of property taken in condemnation proceedings is established by evidence of voluntary sales of property similar to the subject property in terms of size, shape, character and use to which the property taken may be adaptable, made in the same general vicinity, and not too remote in point of time from the date of the taking. *State ex rel. Highway Commission v. Southern*

*Development Co.,* 509 S.W.2d 18, 27[6] (Mo. 1974); *State ex rel. Highway Commission v. Wertz,* 478 S.W.2d 670, 673 (Mo.1972).

▇ Plaintiff's quotation of the rule of law to be applied in admeasuring value of property taken in condemnation proceedings is correct in cases where the land taken is unimproved land as is the case in this instance. *State ex rel. Highway Commission v. Southern Development Co.,* supra, l.c. 27[6]. "Use", as that term is used in the evaluation of property taken in condemnation proceedings, means the permitted utilization made of the property taken under applicable zoning ordinances, tempered by the existing needs and wants of the community, or those that may reasonably be expected in the reasonably near future. *Union Electric Company of Missouri v. McNulty,* 344 S.W.2d 37, 40[4] (Mo.1961). *State ex rel. N. W. Electric Power Co-operative Inc. v. Stewart,* 440 S.W.2d 146, 149 (Mo.App. 1969). Even where there is a showing of reasonable probability of a change in zoning in the reasonably near future, the property must not be evaluated as though the rezoning were already an accomplished fact; rather, it must be evaluated under the then existing zoning restrictions and consideration be allowed to be given to the impact upon market value of the likelihood of a change in zoning. *Union Electric Company v. Saale,* 377 S.W.2d 427, 429[6] (Mo.1964).

▇ Section 1003.107 S.L.C.O.A. enumerates 18 permitted land uses and developments, and 23 other uses and developments which may be allowed on Application for a Conditional Land Use Permit, in "Non-urban" zoned areas of the County.

Review of the evidence at the jury trial shows that Mr. Patton, a witness offered by the defendants and who was between October 11, 1967 and December 31, 1972, Director of Planning for St. Louis County, testified that at the time of the taking on April 23, 1968, it was his opinion that the defendants' tract would have been rezoned from its then existing "Non-urban" classification to allow for an intensive commercial use, its highest and best usage, within "the reasonably near future". On cross-examination, Mr. Patton explained that by the terms "reasonably near future" he meant within one or two years. He further testified that to his knowledge defendants' tract of land had not been rezoned to permit such usage as late as the time of trial in January, 1973.

Mr. Londe testified that the highest and best use of the tract was intensive commercial, i. e., for the convention motel complex he had planned. His opinion of the fair market value of the property taken was $152,500.00, which he arrived at by placing a value on the property if used as a motel complex as he had planned at $775,000.00 and its value after the taking at $470,000.00. He then discounted the difference —$305,000.00—by 50% because the tract had not been rezoned to permit such usage at the time of the taking, and thereby arrived at his value of the acreage taken by the plaintiff.

Plaintiff's experts—two real estate appraisers and a real estate broker—were of the opinion that the market value of the land taken could be determined by comparable sales of other tracts zoned "Non-urban". The two appraisers opined that the fair market value of the land taken was $20,000.00. The real estate broker testified that the market value of the land taken was $4,615.00 an acre, basing this figure upon his handling of a sale of an adjoining piece of property likewise zoned "Non-urban".

Mr. O'Toole, one of plaintiff's experts, testified on cross-examination that while he was familiar with the fact that the defendants had applied for a Special Use Permit in 1962 and in the course of his preparations to place a market value on defendants' property taken in condemnation he had read the ordinance granting the special use and the conditions attached thereto, nevertheless, in arriving at his fair market value figure he gave it no consideration for the purposes of adding to the fair market value of the

property. He did consider it, however, for the possibilities it might have, but since he was aware of the enactment of the comprehensive zoning ordinance by St. Louis County in 1965, he gave it no weight. He said that the zoning at the time, i. e., "Non-urban", was the most important factor in his determination of the value of the property at the time of the taking.

Mr. Herring, plaintiff's second appraiser, testified that while he was familiar with the fact that "Non-urban" classification was one of a "holding pattern" type of zoning, and although he also knew there were long range plans for intensive development of the property, he did not know how long into the future that was going to be, one year or twenty five years, and he concluded that any development of the subject property was so far in the future that no one could predict it. It was his opinion that the reasonable probability of obtaining a change in the zoning of the defendants' property in the reasonably near future to "anything intensive" was very, very poor. He arrived at his valuation by the highest and best use analysis of the property, and considered that any development of the property was so far into the future that no one could predict it.

Mr. Kniffen, the real estate broker who testified for the plaintiff, handled the sale of a parcel of property known as the Cramer property consisting of 19½ acres for $90,-000.00, or $4,615.00 per acre. The property was zoned "Non-urban" and was located adjacent to the Londe tract. In arriving at the sale price he did not take into consideration the zoning because when the Cramers gave him the listing they told him the price they wanted for their property.

The admission of evidence of comparable sales rests largely in the discretion of the trial court and its judgment in this respect will not be disturbed on appeal unless it has been manifestly abused. *State ex rel. Highway Commission v. Wertz,* supra, l.c. 675[2]. The "abuse" of discretion for which reversal of the trial court is a proper remedy on the question of admissibility of evi-

dence is found only "when its ruling runs counter to the logic of presented circumstances and is so unreasonable and arbitrary as to shock the sense of justice and demonstrate a lack of careful consideration." *Missouri State Park Board v. McDaniel,* 473 S.W.2d 774, 778 (Mo.App. 1971).

We hold that the trial court did not err in admitting into evidence comparable sales of "Non-urban" zoned land in the trial of this cause.

The judgment of the trial court is affirmed.

SMITH, P. J., and STEWART, J., concur.