[Civ. No. 14915.  First Dist., Div. One.  Apr. 28, 1952.]

CITY OF DALY CITY, Respondent, v. H. H. SMITH et al.,
Appellants.

Gardiner Johnson, Roy D. Reese, J. W. Coleberd and Richard P. Lyons for Appellants.

Frank B. Blum and Roger Anderson for Respondent.

PETERS, P. J.—H. H. and Annie D. Smith own 5.48 acres of land partially fronting on Mission Street and partially fronting on Hillside Boulevard in Daly City, San Mateo County. The city brought an action to condemn a portion of this area for street purposes. The proposed street will cut the Smiths' property in two. The Smiths, in their answer, claimed $47,040 for the parcel condemned, and $147,560 as severance damage. The trial court, on sharply conflicting evidence, fixed the value of the land condemned at $4,465, and found no severance damage. Judgment was entered accordingly. The Smiths appeal, contending that an opinion rendered by the trial judge demonstrates, to a certainty, that he erroneously and prejudicially rejected and refused to consider all of the testimony presented by them, and further,

that the trial court abused its discretion in failing to appoint its own expert witnesses.

The parcel in question is an irregularly shaped piece of land with a small frontage on Mission Street and a larger frontage on Hillside Boulevard. The portion of the land fronting on Mission Street is zoned for commercial purposes. The balance of the land is not so zoned. The condemned portion runs from Hillside Boulevard, on an angle to Mission Street, but it leaves the Mission Street property with lots deep enough to be used for commercial purposes. The area slopes up sharply from Mission Street and Hillside Boulevard. In 1944 the Smiths purchased 8½ acres, including the 5.48 acres still owned by them, for $7,500. Since 1944 they have done "considerable" grading on the property, with the end in view of constructing a motel on the premises. Apparently the Smiths had applied for a permit to construct such a motel prior to the inception of this condemnation proceeding. The Smiths now operate a motel about a half mile from the property.

The only buildings now on the 5.48 acres are a temporary building formerly used by the Catholic Church as a school, and a small temporary structure on skids, usable as a tool house. There are no buildings of any kind on the condemned property.

The condemned portion totals .72 of an acre or a total of 31,579 square feet. The 5.48 acres contain 238,700 square feet.

H. H. Smith and two experts testified on behalf of appellants. All agreed that the land was ideally located for a motel, and that such use was the highest and best use to which the land could be put. H. H. Smith admitted that he had worked out a detailed plan for the development of the property, and, in fact, had prepared a model of the proposed motel as it would appear after the requisite grading had been done. This model, although referred to, was not introduced into evidence, and appellants ultimately withdrew their offer to introduce it. Smith testified that his estimates of value, both for the condemned portion and for depreciation in value of the remainder of the property, were not based upon any single detailed plan, because he had not finally decided upon a plan. He had previously testified, however, that his opinion of the value of the land taken was based on a plan he had "in mind," and that his estimate of severance damage was also based on the fact that by reason of the condemnation proceeding he was prevented from carrying out this plan.

Smitten, called as an expert by appellants, testified that he based his estimates "to a great extent" on the very plan proposed by Smith, because, in his opinion, that plan constituted the highest and best use to which the property could be put. However, later in his testimony he definitely indicated that his estimates were not based on any specific plan, but on the use of the property for a motel.

Love, the last expert produced by appellants, thought that the property could best be used as a motel, but testified that his estimates of value were not based on any single plan.

There were motions to strike the testimony of Smith and Smitten (and also that of Love for a different reason) on the ground that their estimates of value were based on the premise that the appellants had been prevented from carrying out a specific plan, but the court, recognizing the more general testimony given by both witnesses, denied the motions. The motion as to Love was also denied.

The evidence of these three witnesses can be summarized as follows:

### Smith, H. H.

Highest and best use .......................... modern motel
Value of portion taken .......................... $ 47,040.00
Severance damage ............................... 159,234.00
Benefits ....................................... .00

### Smitten, Kenneth.

Highest and best use .......................... modern motel
Value of portion taken .......................... $ 39,827.00
Severance damage ............................... 116,621.00
Benefits ....................................... .00

### Love, Harry J.

Highest and best use .......................... modern motel
Value of portion taken .......................... $ 40,768.00
Severance damage ............................... 162,032.00
Benefits ....................................... .00

The experts for respondent, four in number, were much more conservative in their estimates. They were all of the opinion that there was no severance damage, and that the remaining property would be substantially benefited by the improvement. All of these witnesses gave consideration to the use of the property as a motel in fixing their estimates.

The testimony of these four witnesses can be summarized as follows:

### Phillips, Joseph J.

Highest and best use .............. commercial and residential
Value of portion taken ........................... $   3,330.00
Severance damage ................................   .00
Benefits ........................................  9,232.00

### Castle, Linval H.

Highest and best use .............., commercial and residential
Value of portion taken ........................... $   4,465.00
Severance damage ................................   .00
Benefits ........................................  32,710.00

### Hollebaugh, Clifford W.

Highest and best use ................first and second residential
Value of portion taken ........................... $   3,000.00
Severance damage ................................   .00
Benefits ........................................  1,610.00

### Smith, Norwood B.

Highest and best use .............. commercial and residential
Value of portion taken ........................... $   3,086.50
Severance damage ................................   .00
Benefits ........................................  29,300.00

By stipulation it was agreed that the trial judge could visit the property, and apparently he did so on two occasions.

Based on this evidence, the trial court found in accordance with the testimony of respondent's experts that there was no severance damage, and fixed the value of the condemned parcel at $4,465, the highest figure testified to by any of respondent's experts.

It is apparent that, so far as the sufficiency of the evidence is concerned, the case presents nothing more than a conflict in the evidence. It is equally apparent that the findings of the trial court are amply supported by substantial evidence. Appellants concede that if only the transcript, the findings and judgment were before us, they would have no substantial question of law to present on this appeal. But, they argue, the findings are subject to attack because the trial judge filed an opinion in which he disclosed, so it is argued, that he completely disregarded all of their expert testimony just as if he had stricken it from the record. This, they contend, was prejudicial error.

Before considering that opinion something should be said about the proper function such an opinion plays on an appeal.

■ Since the adoption of rule 5(a) of the Rules on Appeal in 1943, there can be no doubt that such opinion properly may be incorporated in the record on appeal. The rule so provides. Such opinions are welcomed by the appellate courts. But their function is limited. ■ They may be used to aid the appellate court in ascertaining the process by which the judgment has been reached. (*Stone* v. *Los Angeles County Flood Control Dist.*, 81 Cal.App.2d 902 [185 P.2d 396].) In that case it was contended that the opinion, written on the granting of a motion for a new trial, contained inconsistent statements and demonstrated that the trial judge had inaccurately analyzed the evidence and incorrectly applied the law. The court stated (p. 907): "While an opinion of the judge of the trial court will aid the appellate court in ascertaining the process by which a judgment has been reached it will not be considered in determining whether or not the verdict of the jury or the findings of the court are supported by the evidence. [Citing four cases.] The order when made by the court concludes the case and it cannot be impeached by the judge's opinion. The question that concerns the reviewing court is whether or not the final decision, judgment or order is correct and not whether the reasons expressed in the opinion are in harmony with the result reached or whether they sustain the decision. [Citing a case.]

"Rule 5(a) makes the opinion a part of the record on appeal and thereby places it officially before the reviewing court for its consideration, but it does not modify the limitations found in the foregoing citations upon the effect to be accorded it. [Citing three cases.]"

■ The opinion cannot be used as or substituted for the findings, nor can it be used to modify or impeach them. (*Strudthoff* v. *Yates*, 28 Cal.2d 602 [170 P.2d 873].) In that case the court stated (p. 615): "The long established rule that the opinion of the trial judge cannot be substituted for nor used to modify the findings or judgment (*DeCou* v. *Howell*, 190 Cal. 741, 751 [214 P. 444]) is a complete answer to the plaintiffs' contention concerning the determination as to the value of the orange groves. 'The findings of fact . . . must be taken as embodying the conclusions of the trial court on all questions of fact submitted to it for decision.' (*Goldner* v. *Spencer*, 163 Cal. 317, 320 [125 P. 347].) 'No antecedent expression of the judge, whether casual or cast in the form of an opinion, can in any way restrict his absolute power to declare his final conclusion . . . by filing the "decision"

(findings of fact and conclusions of law) provided for by . . . the Code of Civil Procedure.' (*Scholle* v. *Finnell,* 173 Cal. 372, 376 [159 P. 1179].)''

With these well settled rules in mind we turn to the opinion of the trial court. It reads as follows:

''This action in Eminent Domain by the City of Daly City to acquire for the city a portion of defendants' unimproved real property for the purposes of a city street, is characterized by the remarkable fact that lowest appraisal of the market value of the land so sought to be acquired testified to by the owners' witnesses is $156,448.00 including severance damage and the highest appraisal testified to by plaintiff City's witnesses is $4,465.00 with no severance damage. In considering evidence presented in such sharp conflict and so widely divergent it would appear that the qualification, experience, integrity, bias or prejudice of the witnesses becomes an important factor and must be thoroly considered in an endeavor to arrive at the fair market value of the property. In this regard the Court finds all of the witnesses on both sides to be well qualified and entitled to credence. A careful and critical study of the testimony of each leads the Court to the strong conviction and conclusion that the reason for the amazing divergence of opinion among the expert witnesses lies in the fact that all of the owners' witnesses, in arriving at their approximation of highest and best use and market value, had in mind some peculiar, particular plan of the owner for the use of the property, and that all of their testimony was thereby consciously or unconsciously influenced unduly by such plan. This appears very evident from the fact that thru out their testimony runs a succession of references to 'this plan,' 'his plan,' and 'it is all planned.'

''That the measure of compensation and the market value for the highest and best use of the property may not, under our law, be based upon the value to the owner under some particular. peculiar plan is, of course, well established.

''The Court finds the highest and best use of the property here involved to be partly residential and partly commercial, and fixes the market value at $4,465.00 with no severance damage.''

Appellants argue that this opinion demonstrates that the trial judge refused to consider the testimony of their experts because he felt that such witnesses arrived at their estimates of market value because they had in mind some peculiar, particular plan of the owner for the use of the property,

and because the trial judge was of the opinion that, under the law, the measure of compensation may not be based upon value to the owner of the loss of some peculiar, particular proposed plan of operation. Thus, say appellants, even though the trial judge stated that appellants' experts were well qualified and entitled to credence, he determined the issue of value solely from respondent's testimony. This, they argue, was tantamount to an order striking the testimony of appellants' experts. They make this argument even though the trial court expressly denied motions to strike that testimony.

If it be assumed that, if the opinion did disclose an erroneous reasoning process, it could be used to secure a reversal of a judgment admittedly supported by evidence, we are of the view that the opinion does not disclose an erroneous reasoning process. ■ At most, the opinion is ambiguous. In such cases all ambiguities must be resolved in favor of upholding the action of the trial court if such can be reasonably done. (*People* v. *Megladdery*, 40 Cal.App.2d 748, 773 [106 P.2d 84].)

That the opinion of the trial court did not apply an erroneous theory of law is demonstrated by a brief reference to the applicable law. ■ In a condemnation proceeding the measure of damages is the market value of the parcel taken, plus the depreciation in the market value of the area retained, if such depreciation occurs. ■ Market value is the price that would be paid by a willing purchaser from a willing seller purchasing with a full knowledge of all the uses and purposes for which the property is reasonably adapted. ■ It is hornbook law that it is market value that is involved, and not the value to the owner or to the condemner. ■ For that reason it is generally held that value in terms of money for a particular use is not admissible in such cases. (*Sacramento So. R. R. Co.* v. *Heilbron,* 156 Cal. 408 [104 P. 979]; *Long Beach City H. S. Dist.* v. *Stewart,* 30 Cal.2d 763 [185 P.2d 585, 173 A.L.R. 249]; *Santa Ana* v. *Harlin,* 99 Cal. 538 [34 P. 224]; 1 Nichols on Eminent Domain (2d ed.), § 217, p. 658; Orgel on Valuation Under Eminent Domain, § 30, p. 97; 1 Bonbright, Valuation of Property, p. 413; Schmutz, Condemnation Appraisal Handbook, p. 14; Hanson and Pollard, Condemnation Appraisal Procedure, p. 66.) ■ All reasonable uses must be considered. ■ Evidence of the value of the highest and most valuable use is admissible, not as a specific measure of value, but as a factor in fixing market

value. (*People* v. *Ocean Shore R. R. Inc.*, 32 Cal.2d 406 [196 P.2d 570, 6 A.L.R.2d 1179].)

In *Los Angeles* v. *Kerckhoff-Cuzner Mills & Lbr. Co.*, 15 Cal.App. 676 [115 P. 654], the trial court excluded a diagram of the area involved showing existing and contemplated improvements. The court stated (p. 677) : "At best, this evidence could only be received for the purpose of showing the complete use for which the property was adapted, considering the use then being made of it. Appellant could not be allowed to show enhanced damage which it would suffer by reason of being prevented from carrying out a particular scheme of improvement, existing only in contemplation at the time of the trial. The trial court . . . simply declined to allow appellant to show the location and size of its proposed improvements, and by this ruling we think no error was committed."

The court made it quite clear that evidence of proposed improvements may be admissible to show adaptability of the land for that use, but it cannot be admitted to show enhanced loss because the owner is prohibited from carrying out that particular improvement. In other words, it is not value in use, either actual or prospective, to the owner that is involved, but value in exchange—market value—that is the test. (*Joint Highway Dist. No. 9* v. *Ocean Shore R. R. Co.*, 128 Cal.App. 743 [18 P.2d 413] ; *People* v. *Jones*, 67 Cal.App.2d 531 [155 P.2d 71].)

In some cases evidence that a proposed use based upon a proposed plan would result in a profit is admissible, not for the purpose of enhancing the damages by showing the loss to the owner of a particular plan of operation, but to show that such proposed plan is a feasible plan and should be considered in fixing market value. (*United States* v. *25.406 Acres of Land*, 172 F.2d 990, cert. den. 337 U.S. 931 [69 S.Ct. 1496, 93 L.Ed. 1738].)

The statement in the opinion of the trial judge that all of the experts were entitled to credence certainly does not mean that the trial judge was required to believe all of their testimony. It simply means that, in the opinion of the judge, all of the experts gave honest opinions based upon the factors they considered. The balance of the opinion is ambiguous. If the trial court meant that appellants' experts were not entitled to consider the proposed plan of the appellants to construct a motel on the premises in considering whether the property was adaptable for that purpose as one of its uses, the trial court was clearly wrong. On the other hand,

if it meant that appellants' experts were not entitled to fix damages based upon the fact that the owners were forced to give up a contemplated specific plan, it was clearly correct. The opinion is ambiguous in this respect. Such ambiguity must be resolved in favor of the judgment. So resolved, the opinion correctly states the law.

The only other point urged by appellants is that, because of the great divergence of opinion among the experts, the trial court, on its own motion, should have appointed experts to assist it in resolving this conflict, and that failure to do so was an abuse of discretion as a matter of law. The contention is without merit. ▇▇▇ Section 1871 of the Code of Civil Procedure permits the court, in a proper case, on the motion of any party, or on its own motion, to appoint experts. Undoubtedly that section applies to condemnation proceedings. (*City of Los Angeles* v. *Clay*, 126 Cal.App. 465 [14 P.2d 926].) In the instant case no motion was made by anyone for the appointment of such experts. Both sides produced qualified experts. The judge visited the property. Pictures and maps of the property were introduced into evidence. Whether the trial court needed further help in resolving the issues was a matter resting with it. ▇▇▇ Certainly it is not the law that whenever the parties' experts radically differ on the issue of value, the court must, as a matter of law, appoint experts. If that were so, such experts would have to be appointed in practically every case where expert evidence is admissible. The point is without merit.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied May 28, 1952, and appellants' petition for a hearing by the Supreme Court was denied June 26, 1952. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.