Elliott STRAUGHAN et al., Judges of the County Court of St. Francois County, Missouri, and St. Francois County, Missouri, Plaintiffs-Appellants,

v.

Raymond J. MURPHY and Antoinette Murphy, Defendants-Respondents.

No. 55924.

Supreme Court of Missouri, Division No. 1.

Sept. 11, 1972.

Roberts & Roberts, Raymond R. Roberts, Farmington, for appellants.

Samuel Richeson, Nicholas G. Gasaway, Dearing, Richeson, Roberts & Wegmann, Hillsboro, for respondents.

WELBORN, Commissioner.

Action by County Court of St. Francois County to condemn land for park purposes. Commissioners fixed landowners' damages at $51,600. At earlier trial, jury awarded landowners $100,378, but judgment was reversed because of error in the exclusion of evidence regarding landowners' offer to sell to a park association. Second trial resulted in verdict for landowners for $125,000. This appeal by county court followed.

Raymond J. and Antoinette Murphy were the owners of approximately 1040 acres of land in St. Francois County, located north of Bonne Terre. Approximately 998.99 acres of the tract were located east of relocated U.S. Highway 67. That was the portion of the entire tract which the county condemned for park purposes.

Raymond Murphy testified that the damage from the taking was $250,000. Other witnesses for the defendants testified to damages of from $164,441 to $197,750. Plaintiffs' witnesses fixed damages at from $20,000 to $41,500.

Appellants' first point on this appeal charges that the trial court erroneously approved the argument of counsel for the defendants that expense of trial was a proper element of damages. In the opening argument, defendants' counsel stated:

" * * * The only way that you have any right to consider the testimony with respect to what Mr. Murphy may or may not have said about the price he was willing at some time or another to take for the property is as to whether or not that constituted the fair market value of the property at the time that he made that statement, and in that connection I want to say to you that the evidence shows that Mr. Murphy was as much interested as any of the other folks in the St. Francois County

area in obtaining a park for that area, and it was only after matters between them came to such a point that they couldn't agree, that they squared off and got ready to fight and went to court and then, of course, the Court tells you that you take into consideration only the difference in the fair market value before and after, because, obviously there has been much time consumed in litigation and expense in preparation for trial, the procurement and attendance of witnesses, lawyers' fees and after all of this is taken into consideration, obviously,—

"MR. ROBERTS: Well, now, Your Honor, that is not relevant to any issue, that is not a proper element of damage.

"THE COURT: I believe that is correct.

"MR. RICHESON: It certainly is, the expense of trial, Your Honor.

"THE COURT: Yes, the expense of trial.

"MR. RICHESON: Obviously, that fair measure of damages as outlined by the Court in its Instruction No. 3, the difference between the fair market value before and after, and that is what I want to talk to you about."

Respondents do not question the proposition that a misstatement in argument by counsel of the applicable law which receives the approval of the court may constitute prejudicial and reversible error. See State ex rel. State Highway Commission v. Thurman, Mo.App., 391 S.W.2d 603, 604–605 [2]; State ex rel. State Highway Commission v. Thurman, Mo. App., 428 S.W.2d 955, 958–959 [4]. The contention of respondents is that the trial court here placed its approval on the appellants' statement of the applicable law and on respondents' concurrence with appellants' statement.

The import of the trial court's ruling on appellants' objection is not clear. The record here is reasonably susceptible of construction that the trial court agreed with appellants' counsel's stated grounds of objection, that respondents' counsel acknowledged the correctness of his adversary's and the court's remarks and the trial court's second statement was in support of appellants' original objection. For the purpose of determining the contention here advanced, that construction, which avoids error on the part of the trial court, is accepted. 4 Am.Jur.2d Appeal & Error, § 400, p. 865; 4A C.J.S. Appeal and Error § 1143, p. 1208; St. Louis Perpetual Ins. Co. v. Cohen, 9 Mo. 421, 441.

The defendants' damage evidence was premised upon the asserted intention of Murphy to develop the property as a lakeside development, constructing a lake around which he would subdivide and sell residential lots and provide recreational facilities. Plaintiffs objected that no such development was possible as a matter of law because there was no right of access to Highway 67 for such use and because outstanding mineral interests owned by others made such a development impossible. This objection, made during defendants' opening statement to the jury, was overruled.

In his direct examination, Murphy testified that he had right of access to Route 67 at three points. On cross-examination, counsel for plaintiffs referred to the State Highway Commission's plans for the improvement of Route 67 adjoining Murphy's property and inquired whether or not those plans designated the entrances to Murphy's property as "field entrances." Murphy replied that he did not know but acknowledged, when shown the highway plans, that the plans identified each of the three entrances by the letters "F.E." On redirect examination, Murphy was asked by his counsel to read from the first sheet of the plans the following:

"A 'There shall be the usual right of access over any location either, one, shown on these plans as a property entrance, "P. E.", field entrance, "F.E.", or private un-

derpass; or, two, where and when any such entrance, underpass or an open public highway is being maintained by a government agency having authority therefor.'"

Plaintiffs called ·as a witness Mr. Richard P. Morris, a Missouri State Highway Department permit inspector. Morris testified that he was familiar with the plans for Route 67 and the fact that the entrances to the Murphy property were designated "field entrances." The witness was asked to explain what a field entrance is. Defendants' counsel objected on the grounds that the rights of the landowners are governed by the plans and the right-of-way deed or condemnation judgment by which the highway department acquires its right-of-way. A conference was held outside the hearing of the jury at which plaintiffs' counsel asserted that the plans were vague and not understood and that the witness's testimony was needed to "help to clarify the issue to the jury."

An offer of proof was made by plaintiffs that the witness would testify: "A field entrance is only for a field, which is only approximately fourteen to sixteen feet wide and it is to be used only as a field entrance * * *. There is to be no sand or gravel unless it has been approved and sent through the Bureau. It can't be widened, the Bureau of Public Roads would have to approve it." The witness stated in connection with· the offer of proof that his description of what would be done with a field entrance would be "based on our [Highway Department] policy," which is established by the Highway Commission by rules and regulations adopted by it and filed in the commission office.

The trial court sustained defendants' objection to the testimony and offer of proof on the grounds that the plans and right-of-way conveyances fixed Murphy's rights and that the witness's testimony could not enlarge or lessen those rights by reason of any regulation or policy of the Highway Commission, the best evidence of

which would be the commission's regulations.

On this appeal, the trial court's ruling is assigned as error on the grounds that the witness's testimony was admissible to show the meaning of technical and ambiguous designations used by the Highway Commission for the term "F.E."

■ Had the witness proposed to testify only as to the type of entrance which Murphy had or as to the meaning of the letters "F.E.," his testimony would have been admissible under cases relied upon by appellants, particularly State ex rel. State Highway Commission v. Bengal, Mo.App., 124 S.W.2d 687, 689 [7], [8], where it was held that a civil engineer might interpret state highway plans to the extent of testifying that they provided a "farm entrance" at a certain point. However, the witness in this case proposed not merely to identify the entrances and to explain the meaning of the letters "F.E." He proposed also to testify to the legal consequences and limitations attached to the grant of such an access right which were, the witness acknowledged, prescribed by rules and regulations of the Highway Commission. Such acknowledgment permitted invocation of the best evidence rule which defendants did rely upon. The rules and regulations of the commission were the best evidence of their content and the trial court did not err in sustaining the objection on such basis to the offer of proof. 29 Am.Jur.2d, Evidence, § 484, p. 542; State ex inf. West ex rel. Thompson v. Heffernan, 243 Mo. 442, 148 S.W. 90, 93 [6]. It might be noted that in Wilhelm v. Kansas City Public Service Co., 358 Mo. 6, 212 S.W.2d 915, 917–918 [1–3], relied upon by appellants, the court specifically called attention to the absence of objection based upon the best evidence rule to the testimony in that case.

■ Appellants invoke the doctrine of curative admissibility in support of the proffered testimony. They contend that Murphy testified that the entrances were

adequate for a lake development and therefore Morris's testimony on that point should have been admitted. Murphy was asked on cross-examiantion whether he considered the three entrances provided by the highway plans adequate for a lake development and he gave an affirmative answer. Appellants cannot take advantage of the doctrine of curative admissibility to counter testimony they adduced.

The appellants called as a witness Mr. Calvin Furry, who testified that he participated in a lake subdivision development in Washington County. Upon objection to further testimony regarding that project, appellants made an offer of proof, stated in appellants' brief as follows:

" * * * At that time the County made its offer of proof to show that Furry undertook the building of a lake subdivision in Washington County that was subject to a mineral lease; that the lease was limited to certain minerals only whereas the property of Mr. Murphy was a blanket mineral lease; that at the time Mr. Furry undertook the subdivision lake, there was no mining being conducted, and that Mr. Furry was permanently enjoined by the owners of the mineral lease from building the lake subdivision * * *. The offer was to establish the witness's qualifications to express an opinion concerning the suitability of the Murphy property for a lake and subdivision and to further demonstrate development would interfere with the rights of the owners of the mineral leases.

"The County made a separate offer to ask the witness if this development was undertaken on property that was subject to a mineral lease and then based on his experience whether or not the property being subject to mineral rights was not adaptable to lake subdivision * * *. The Court sustained the objection to all offers of proof."

Appellants contend that the trial court erred in excluding Furry's testimony because it was admissible to show the specu-

lative nature of Murphy's claimed highest and best use of the tract.

■■ The trial court properly refused to permit the witness to testify concerning the Washington County project insofar as such testimony was offered to demonstrate that Murphy's proposed development would interfere with the right of owners of minerals on his land. Litigation involving the Washington County project was in the Federal courts and is reported in the case of Harris et al. v. Charles Pfizer & Co., Inc., 385 F.2d 766, decided by the United States Circuit Court of Appeals for the Eighth Circuit. The opinion in that case clearly supports the trial court's conclusion that the mineral rights there involved and those in the present case were so different that references to the Harris case could only serve to confuse the issues in the present case. Nor did the trial court abuse its discretion in refusing to permit the jury to hear such testimony as bearing on Furry's qualifications as an expert witness. The trial court was entrusted with discretion in passing upon Furry's qualifications. Yocum v. Kansas City Public Service Co., Mo.Sup., 349 S.W.2d 860, 864 [1]; Guiley v. Lowe, Mo.Sup., 314 S.W.2d 232, 238 [7, 8]. Under the offer of proof, there was no abuse of discretion in the court's conclusion that the Washington County experience would not qualify Furry as an expert for the instant case, and therefore there was no reason for the jury to hear such testimony.

Appellants say that no specific objection was made that Furry was not qualified as an expert to express an opinion as to whether the existence of separate outstanding mineral rights rendered property not adaptable to a lake subdivision. The basic grounds of the court's ruling on the offer of proof was that the Washington County experience did not qualify Furry as an expert in a different situation. Regardless of the absence of a specific objection on such grounds, the trial court is not to be convicted of error on this record for refus-

ing to permit Furry to express an opinion as an expert.

■ Again, appellants invoke the curative admissibility rule on the theory that Murphy testified that the outstanding mineral interests would not have interfered with his proposed development. Such testimony would not render admissible testimony that in different circumstances the holders of the mineral interests had been able to prevent a similar development. See Dickerson v. St. Louis Public Service Co., 365 Mo. 738, 286 S.W.2d 820, 827 [12, 13].

■ Appellants contend that the trial court erroneously permitted Murphy to testify concerning the number of cattle on his property at the time of the taking and concerning the sale of such cattle, purebred Herefords, as plain beef since he had no time to arrange a disposal sale.

Murphy did testify that when the land was taken he had 129 head of cattle on the property. Such evidence was admitted, over appellants' objection, as showing the capability of the land to carry cattle, thereby bearing on the question of value of the land. Subsequently Murphy testified that the cattle were purebred Herefords, but that he had to dispose of them as beef cattle when the land was taken because he didn't have time to arrange a disposal sale. No objection was made to the testimony regarding the disposition of the cattle.

Appellants contend that this testimony injected into the case the issue of damage to personal property arising out of the taking. The trial court correctly ruled that the number of cattle the property could carry would bear on its value. The absence of any objection to the testimony concerning the disposition of the cattle precludes any claim of error on the basis of such testimony. Nichols v. Blake, Mo. Sup., 418 S.W.2d 188, 191 [7].

Appellants contend that the trial court erred in admitting Murphy's testimony that he assembled the property for the purpose of a lake subdivision and his testimony concerning his plans for such development. The assignment of error is based upon the claimed lack of right on Murphy's part to make such use of the property in view of the outstanding mineral rights upon the claimed lack of access to the property for such purpose, and upon the contention that defendants' planned future use did not demonstrate a presently enhanced market value by reason of adaptability to such use.

Murphy assembled the property involved between 1955 and 1963 for a total purchase price of $20,820. This price included the approximately 40 acres not taken in the condemnation. Over objection, Murphy testified that when he acquired the property he planned "to develop a lake site with residential facilities, sell lots, provide recreational facilities to entertain the people that came there to live. * * * Well, being that we had a mile and a half of Big River frontage, we were going to have fishing, boating, swimming, horseback riding, provide golf, tennis, picnicking; all the things that people want to do when they want to get out."

" * * * In cases involving a taking of real estate, or an interest therein ' " * * * the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future." ' Union Electric Company of Missouri v. McNulty, Mo.Sup., 344 S.W.2d 37, at p. 40, quoting from 29 C.J.S. Eminent Domain § 160, p. 1026. Furthermore, speculative schemes of use by the proprietor must be excluded as there must be a demonstrable relationship between the future use and present value of the land. Northeast Missouri Electric Power Coop. v. Todd, Mo. App., 401 S.W.2d 161, at p. 164; Empire Dist. Electric Co. v. Johnston, 241 Mo.App. 759, 268 S.W.2d 78." State ex rel. N.W. Electric Power Coop., Inc. v. Stewart, Mo.App., 440 S.W.2d 146, 149 [1, 2].

■ On the evidence here, the access and mineral rights issues were factors for

consideration by the jury in passing upon the adaptability of the property for a different use. The highway department plans showed that the owner of property on which a field entrance was located "had the usual right of access" over such location. Murphy testified that such entrances were adequate for the development of the property. Photographs of the entrances as they existed upon completion of Route 67 were in evidence for the jury's consideration. The mineral reservations in the deeds to Murphy were in evidence. There was evidence that owners of land in the vicinity constructed lakes on their land, despite the existence of outstanding mineral rights. There was testimony that such outstanding rights did not inhibit the development and sale of land for residential purposes.

Although defendant was permitted to testify to his plans and intentions in purchasing the property, such testimony was not the sole basis for a valuation based upon such planned use. There was evidence that the property was adapted to such use and that the defendant had taken some preliminary steps to effectuate his plans. There was evidence that such development had proceeded successfully in the vicinity of Murphy's land.

The principles of law here applicable are set forth clearly and concisely in the case of Empire District Electric Co. v. Johnston, 241 Mo.App. 759, 268 S.W.2d 78, 81–83 (footnotes omitted):

"There is substantial and persuasive authority, both by express declaration and by inference, intendment or result, for the proposition that it is improper to permit a landowner to testify in a condemnation proceeding as to the specific use which he may intend to make of his property. The rationale of the listed cases seems to be that evidence of this character offered in those instances has been too speculative, conjectural or remote and thus has been inadmissible under the general principle that 'elements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable should be excluded from consideration for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of value.'

"[3, 4] Of course, it is proper for the jury to take into consideration all uses for which the condemnee's property is suitable and adaptable, having regard to existing business or wants of the community, or such as may be reasonably expected in the immediate future; and, it has been held in a number of cases that evidence of intended use or proposed improvements tending to show or illustrate the adaptability of condemnee's property for certain uses or purposes may be admissible. ' * * * evidence of the advantages which the owner has been able, *or will be able,* to take of his property may often be competent evidence of the advantages which some other owner might take'. Orgel on Valuation Under Eminent Domain (2nd Ed. 1953) Sec. 45, p. 215. ' * * * the question of whether evidence of this kind is proper depends entirely upon the purpose for which it is offered and to which it is limited by the court. If it is offered merely as an illustration of one of the uses to which the property is adapted and it is clearly and expressly limited by the court to such object it will not be prejudicial error to admit it * * *.' Department of Public Works, etc. v. Lambert, 411 Ill. 183, 103 N.E.2d 356, 361(8). In discussing an ambiguous memorandum filed by the trial judge, the appellate court commented in Daly City v. Smith, 110 Cal.App.2d 524, 243 P.2d 46, 51, that 'if the trial court meant that appellants' [condemnees'] experts were not entitled to consider the proposed plan of the appellants to construct a motel on the premises in considering whether the property was adaptable for that purpose as one of its uses, the trial court was clearly wrong'. In other words, evidence as to intended use may be proper or, in any event, harmless so long as its

purpose and effect is simply to show or illustrate adaptability of condemnee's land for the proposed use, but such evidence becomes improper and prejudicial if and when its purpose and effect is 'to show enhanced loss because the owner is prohibited from carrying out that particular improvement', Daly City v. Smith, supra, 243 P.2d loc. cit. 51, or 'if the object is to enhance the damages by showing such a [proposed] structure would be a profitable investment', Department of Public Works, etc. v. Lambert, supra, 103 N.E.2d loc. cit. 361.

"[5] In the instant case, as in People v. La Macchia, Cal.App., 253 P.2d 709, 718, 'the evidence of the owners' plans for the use of the property was really a part of the description of the uses to which the land is adapted, and was not expressed in terms of money value'. All of the witnesses in the instant case properly expressed their opinion as to the reasonable market value of defendants' tract immediately before and immediately after condemnation, without limitation to any single, specific or intended use of the land. All cautionary instructions requested by plaintiff were given, including a warning 'that in computing the damages * * * you should not consider speculative or contingent matters which could or might result in damage to the owners of said properties'; and, by the only instruction given at defendants' request (of which no complaint is made by plaintiff), the jury was instructed correctly on the measure of damages."

No cautionary instructions were requested in this case. The only instruction offered by plaintiffs on the subject would have withdrawn from the jury the question of value of the property for a lake development. On the evidence, the trial court properly refused such instruction and no error is to be found in the admission of the testimony on this issue.

■ Appellants contend that the trial court erred in overruling their objection to the testimony as a valuation witness for the defendant of the clerk of the court in which the case was tried. Objection to the testimony was on the grounds that he was the clerk of the court and that, although he did not sit in the courtroom at the trial of the case, there was a sign on the desk at which the deputy sat denoting that the witness, Bryan Jones, was the clerk of the court. Here appellants contend that the clerk's testimony in a case such as this might be accorded greater weight because of his official position and because he might appear to be speaking with the approval of the court.

Neither of the cases relied upon by appellants holds that the clerk of the court is disqualified as a valuation witness in eminent domain proceedings. In Elkins v. State, 13 Ga. 435, the question was whether or not the clerk, who was the custodian of the records of liquor licenses, could testify that no license had been issued to a person charged with violating the liquor law, or whether the record itself was the best evidence of such negative fact. In Gajewski v. United States, 8 Cir., 321 F.2d 261 (cert. dėn. 375 U.S. 968, 84 S.Ct. 486, 11 L.Ed.2d 416), the question was the relevancy of testimony proposed to be adduced from the clerk if he was permitted to be called as a witness. Neither case dealt with the qualifications of the clerk as a witness relative to other than his official duties.

No reference was made in the witness's testimony to his official position. He had engaged in the real estate business and had lived for many years on a farm in the vicinity of the Murphy property and was familiar with it. In these circumstances, no abuse of discretion in permitting the witness to testify appears. State ex rel. State Highway Commission v. Barron, Mo.Sup., 400 S.W.2d 33, 36–37 [3–13].

■ Appellants contend that by reason of the alleged errors heretofore considered, the verdict was excessive. None of the matters relied upon was found error. The

verdict was within the range of the testimony and therefore will not be disturbed on appeal. State ex rel. State Highway Commission v. Twin Lakes Golf Club, Inc., et al., Mo.Sup., 470 S.W.2d 313, 315 [3–6].

Judgment affirmed.

HIGGINS, C., not sitting.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

HOLMAN, P. J., SEILER, J., and NORMILE, Special Judge, concur.

BARDGETT, J., not sitting.